## IN THE COURT OF APPEALS OF IOWA

No. 16-0370
Filed March 8, 2017

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**GATLUAK BOL,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Marshall County, James C. Ellefson, Judge.

        A defendant appeals his convictions for sexual abuse in the third degree and assault with intent to commit sexual abuse.  **AFFIRMED AND REMANDED.**

        Mark C. Smith, State Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Kevin Cmelik and Kristin Guddall (until withdrawal), Assistant Attorneys General, for appellee.

        Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**TABOR, Judge.**

A jury found Gatluak Bol guilty of sexual abuse in the third degree and assault with intent to commit sexual abuse based on evidence he attacked L.H. in the basement of the meat-packing plant where they both worked. He seeks a new trial on the assault offense, arguing his attorney should have objected to the jury instruction describing the elements of that crime. He also points out the written sentencing order contradicts the district court's oral pronouncement regarding fines and surcharges. Finally, Bol filed a pro se supplemental brief asking us to consider the sufficiency of the evidence for his convictions and the constitutionality of his sentence.

Because the jury instructions, read together, adequately defined the elements of assault with intent to commit sexual abuse, counsel had no duty to object. Accordingly, we reject Bol's claims of ineffective assistance of counsel. We likewise find no ground for relief in Bol's pro se filing. But because the written judgment was at odds with the oral sentencing pronouncement, we remand for entry of a corrected sentencing order.

I. **Facts and Prior Proceedings**

In late October 2015, L.H. started working the night shift at the JBS Swift plant. After a training session in early November, she lost her way back to the company office and encountered coworker Bol. When she asked him directions, he pointed out various routes and eventually said he would escort her there. Instead, he led her down a long hallway into the basement.

In that isolated location, Bol pushed her up against the wall and tried to kiss her. L.H. told Bol to leave her alone and tried to walk away. But he blocked

her departure with his arm and tried to open her shirt and kiss her neck. She also thought he was reaching for his penis so that she would "have some kind of relations with him." She rebuffed him, saying: "No, I'm not that girl. I'm not doing this." He then pushed her head toward his penis, and L.H. recalled him saying "something like suck my dick" as "he was reaching into his pants." L.H. yelled, but she could not be heard on the floors above over the whir of machinery.

As she tried to scramble away, L.H. fell to the floor. She felt a light bulb hit her head. While she was on the ground, Bol pulled off her clothes, tried to penetrate her anus, then pulled out her tampon, and penetrated her vagina. During the sex act, he was startled and released her arms. She was able to pull up her uniform pants and run for help. Shaking and crying, she immediately reported the rape.

When police interviewed Bol, he denied committing the sex act and predicted they would not find his DNA on L.H.'s body or clothing. But later testing did show Bol's DNA on L.H.'s underwear and on swabs of her vagina, inner thighs, and anus. Police also found the broken light bulb and tampon on the basement floor of the plant. In a later interview, Bol admitted arguing with L.H. in the basement but said nothing sexual happened, and he could not explain how his DNA ended up on her body.

The State charged Bol with two counts: (I) sexual abuse in the third degree, a class "C" felony, in violation of Iowa Code sections 709.1, 709.4(1) and 702.17 (2015), alleging he engaged in a sex act ("vaginal intercourse") by force or against the will of L.H.; and (II) assault with intent to commit sexual abuse, an

aggravated misdemeanor, in violation of sections 709.11 and 708.1, alleging he also tried to force L.H. to perform a different sex act ("oral sex").

At trial, the State offered testimony from L.H., several investigating officers, and a criminalist who had compared the DNA samples. Bol took the stand in his own defense, telling the jury L.H. twice asked him for directions that night and then came back a third time "looking for sex" in exchange for money. He claimed the sex act in the basement was consensual, but she "took off" because they fought over the payment arrangement. Apparently accepting L.H.'s testimony and rejecting Bol's version of events, the jury returned guilty verdicts on both counts.

The district court sentenced Bol to consecutive, indeterminate terms of ten years and two years. The court assessed and suspended the minimum fines and surcharges on each count. The court also ordered Bol to provide a DNA sample, register as a sex offender, and serve a lifetime "special sentence" for count one and a ten-year "special sentence" for count two. *See* Iowa Code §§ 692A.103, 903B.1–.2. In addition, Bol was responsible for victim restitution and attorney fees. Finally, the court issued a five-year no-contact order.

Bol now appeals

## II.     Analysis

### A.  Ineffective Assistance of Counsel—Jury Instruction

Bol argues his trial counsel was ineffective in not objecting to the marshalling instruction for assault with intent to commit sexual abuse. We review his claims of ineffective assistance of counsel de novo. *State v. Ambrose*, 861 N.W.2d 550, 555 (Iowa 2015). On appeal, Bol must show counsel failed to

perform an essential duty and that failure resulted in prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). While we often preserve such claims for further factual development, this record enables us to decide the question.

The marshalling instruction at issue provided:

> Regarding Count II, the State must prove all of the following elements of Assault with Intent to Commit Sexual Abuse:
> 1. On or about the 14th day of November, 2014, the defendant assaulted [L.H.]
> An "assault" is committed when a person, with the apparent ability to do the act, does an act that is (a) meant to cause pain or injury to another person or (b) meant to result in physical contact with another person that will be insulting or offensive to that person or (c) meant to place another person in fear of immediate physical contact which will be painful, injurious, insulting or offense to that person. "Apparent ability" means that a reasonable person in the Defendant's position would expect the act to be completed under the existing facts and circumstances.
> 2. The defendant did so with the specific intent to commit a sex act by force or against the will of [L.H.]
> "Specific intent" means not only being aware of doing an act and doing it voluntarily, but in addition, doing it with a specific purpose in mind. Because determining a person's specific intent requires you to decide what he was thinking when an act was done, it is seldom capable of direct proof. Therefore, you should consider the facts and circumstances surrounding an act to determine the person's specific intent. You may, but are not required to, conclude that a person intends the natural results of his voluntary acts.
> If the State has proved both of these elements, the defendant is guilty of Assault with Intent to Commit Sexual Abuse.
> If the State has proved the assault element but not the specific intent element, the defendant is guilty of Assault.
> If the State has failed to prove Assault, then the defendant is not guilty of any crime under Count II.

On appeal, Bol argues his attorney should have objected to this jury instruction on two bases: (1) it allegedly misstates the definition of assault and (2) it does not specify what sex act Bol intended to commit. We will address each claimed deficiency in turn.

First, Bol complains the marshalling instruction's assault definition did not use the phrase "specific intent" and substituted the word "meant" for the statutory phrase "intended to." *See* Iowa Code § 708.1(2) (providing a person commits an assault by doing "any act which is intended to cause pain or injury to, or which is intended to result in physical contact which will be insulting or offensive to another" or "any act which is intended to place another in fear of immediate physical contact which will be painful, injurious, insulting, or offensive, coupled with the apparent ability to execute the act."); *see also State v. Bedard*, 668 N.W.2d 598, 601 (Iowa 2003) (holding elements of assault require proof of specific intent); *State v. Heard*, 636 N.W.2d 227, 231 (Iowa 2001) (same).

We are not persuaded by either complaint. The district court "may phrase the instructions in its own words as long as the instructions given fully and fairly advise the jury of the issues it is to decide and the law which is applicable." *State v. Liggins*, 557 N.W.2d 263, 267 (Iowa 1996). The court did not need to inform the jury that assault required proof of "specific intent" when the language of the instruction accurately described the specific purpose that Bol had to have in mind to be guilty of the offense. *See State v. Keeton*, 710 N.W.2d 531, 534 (Iowa 2006) (deemphasizing the "label attached to the offense" if the State can prove "the mens rea required by the statute"). We are also confident the jury knew what "meant" meant. *See State v. Brown*, No. 05-0266, 2006 WL 334231, at *3 (Iowa Ct. App. Feb. 15, 2006) ("We also are unable to discern any meaningful difference between the word 'meant' as used in [assault marshalling instruction] and the concept of specific intent referred to in *Bedard* and *Heard*.").

Second, Bol argues the assault-with-intent marshalling instruction was an "incomplete statement of the law" because it failed to define the element of sexual abuse. It is true the marshalling instruction did not name the sex act that Bol intended to commit. But instructions are not read in isolation. *State v. Scalise*, 660 N.W.2d 58, 64 (Iowa 2003). The district court provided the jurors with preliminary instructions specifying from the outset that for count II, the State alleged Bol committed an assault with "the intent to sexually abuse (intended oral sex)" L.H. It was also clear from the State's closing arguments what sex act was at issue. The prosecutor addressed the instruction Bol now challenges, saying: "He had specific intent to commit that sex act, 'sucking his dick,' doing the oral sex act when he was pushing her head forward."

Because the marshalling instruction adequately conveyed the elements of assault with intent to commit sexual abuse, trial counsel had no reason to object to its wording. On this record, Bol is unable to prove faulty representation. *See State v. Smothers*, 590 N.W.2d 721, 724 (Iowa 1999) (holding counsel has no duty to advance a meritless objection). Because no breach of duty occurred, we need not consider the prejudice element of Bol's claim. *See Dempsey v. State*, 860 N.W.2d 860, 868 (Iowa 2015) ("If we conclude a claimant has failed to establish either of these elements, we need not address the remaining element."). Finding Bol cannot show ineffective assistance of counsel, we affirm his conviction on the assault offense.

## B. Sentencing—Nunc Pro Tunc Order

Bol also claims the court erred in the written sentencing order. We review sentencing claims for correction of errors at law. *State v. Hess*, 533 N.W.2d 525, 527 (Iowa 1995). During the sentencing hearing, the court announced:

> The fines and surcharges it seems to me contribute little to the safety of the community and in this particular instance are more likely in view of a period of incarceration of at a minimum [seven] years and potentially as long as [twelve] years are likely to be an impediment to the defendant's rehabilitation and so the fines and the related [thirty-five] percent surcharges will be suspended.

But the written judgment order imposed fines of $1000 and $625, plus surcharges, on the two counts. When a discrepancy arises between the oral pronouncement of sentence and the written judgment, the oral pronouncement governs. *Id.* at 528. The State concedes error on this point, acknowledging correction is appropriate under Iowa Rule of Criminal Procedure 2.23(3)(g).

Accordingly, we remand this case for the district court to issue a nunc pro tunc order amending the judgment entry to reflect the oral pronouncement that Bol's fines and surcharges are suspended. *See id.* at 527 ("[W]hen a judgment entry incorrectly differs from the oral rendition of the judgment merely as a result of clerical error, the trial court holds the inherent power to correct the judgment entry so that it will reflect the actual pronouncement of the court. The district court may correct a clerical error in a judgment entry through issuance of a nunc pro tunc order." (citations omitted)).

## C. Pro Se Claims

In his pro se filing, Bol repeats the claim from his trial testimony that L.H. was demanding money for sex. He alleges racial bias and asks for the appellate

court to "look at the whole procedural process of his trial."  Random mention of a concern, without elaboration or supporting authority, is not sufficient to raise an issue for our review.  *Schreiber v. State*, 666 N.W.2d 127, 128 (Iowa 2003).  But even if we consider the sufficiency issue properly raised, we view the evidence in the light most favorable to the State and find ample support for the jury's verdicts in L.H.'s testimony and the corroborating evidence.  *See Liggins*, 557 N.W.2d at 269 ("A jury is free to believe or disbelieve any testimony as it chooses and to give as much weight to the evidence as, in its judgment, such evidence should receive.").

Bol also contends his "lifetime special sentence" constitutes double jeopardy.  He provides no support for his contention.  We have previously decided special probationary sentences imposed on sex offenders under chapter 903B do not violate the federal protection against double jeopardy.  *See State v. McDaniel*, No. 14-1538, 2015 WL 5965195, at *1 (Iowa Ct. App. Oct. 14, 2015) (citing Fifth Amendment to the United States Constitution).  Nothing in Bol's pro se filing entitles him to relief.

### D.  Conclusion

Having rejected Bol's claim of ineffective assistance of counsel, raised through appellate counsel, as well as his pro se claims, we affirm his convictions. But we remand to the district court for issuance of a nunc pro tunc order to correct the written sentencing order.

**AFFIRMED AND REMANDED.**