# IN THE COURT OF APPEALS OF IOWA

No. 22-1755
Filed November 21, 2023

**STATE OF IOWA,**
　　Plaintiff-Appellee,

**vs.**

**DENNIS GARY RIDDER,**
　　Defendant-Appellant.
_____

　　Appeal from the Iowa District Court for Cerro Gordo County, Karen Kaufman Salic, District Associate Judge.

　　A defendant appeals his conviction for second-degree harassment, challenging the sufficiency of the evidence. **AFFIRMED.**

　　Karmen Anderson, Des Moines, for appellant.

　　Brenna Bird, Attorney General, and Zachary Miller, Assistant Attorney General, for appellee.

　　Considered by Tabor, P.J., and Badding and Chicchelly, JJ.

**BADDING, Judge.**

A "run of the mill fender bender," according to Dennis Ridder, led to his conviction for second-degree harassment. On appeal, he challenges the sufficiency of the evidence supporting that conviction. Upon viewing the evidence in the light most favorable to the verdict, *see State v. Ortiz*, 905 N.W.2d 174, 180 (Iowa 2017), we affirm.

On August 5, 2021 at roughly 3:00 p.m., M.L.M. was driving a vehicle with a trailer in tow when she "heard a bump" and then "a lot of beeping." She explained:

> [S]omebody was honking at me, and so I immediately pulled over . . . . I proceeded to get out and ask for their insurance and then called, you know, the police to figure it out. As I was walking out, this older guy stepped out and he got right in my face and he was very aggressive. I stepped back a little bit. He was telling me it was my fault. I was just trying to get his insurance information, and then another guy showed up in a red pickup . . . .

The older gentleman was Dennis Ridder, and the individual in the red truck was D.M., who witnessed the accident. D.M. testified that he was following behind Ridder's vehicle when it veered into the passing lane and hit the trailer. D.M. got caught at a traffic light, but he watched the other two vehicles pull into a cul-de-sac. By the time he got there, D.M. testified that Ridder was "yelling and screaming at this young gal blaming her for the accident." So D.M. yelled out his window, "no, you're wrong, you hit her in the back of the trailer."

Ridder turned his attention to D.M., who was still in his truck, and started yelling at him. D.M. testified, "[N]ext I know he reached in the window of my truck and hit me." Feeling the need to defend himself, D.M. decided to get out of his truck. But Ridder had "his knee up against the door." After D.M. forced his way

out, Ridder was still "aggressive and he had me trapped between my truck and himself." To protect himself and "create space" between them, D.M. pushed Ridder, causing him to fall. M.L.M. testified that, from her view, it looked like D.M. put his finger on Ridder's chest and shoved him. D.M. testified that Ridder "jumped up instantly and he says, 'I'm going to kill your freaking ass,' and went to his truck and grabbed the gun." D.M. took cover behind his truck, while Ridder pointed the gun at him and M.L.M.

A video with no sound taken by one of M.L.M.'s passengers shows Ridder getting a gun out of his truck while D.M. was still at his vehicle. No one was near Ridder when he pulled the gun from his truck. Yet Ridder testified that D.M. followed him to his truck—after hitting Ridder twelve to fourteen times and knocking him down—pulled him out, and said, "I'm going to lay you flat." That's when Ridder said that he grabbed his gun, pointed it at D.M., and told him, "Get the hell away from me." Ridder testified, "I didn't say nothing about killing. I think I said, 'I'm going to let you have it. . . .'" Once D.M. backed off, Ridder got in his truck and left.

Police officers, who had been dispatched for "some sort of road rage incident involving a firearm," initiated a traffic stop of Ridder. They searched his vehicle and found an air-soft gun and a starter pistol. Ridder admitted that he pointed the starter pistol at D.M. and M.L.M., but he said it was because he felt threatened. A sergeant who was involved with the stop testified that the starter pistol only fires blanks. But when he first saw it, the sergeant testified that it looked like "an actual working gun."

On these facts, a jury found Ridder guilty of second-degree harassment. Ridder claims that verdict was not supported by sufficient evidence because (1) "two [S]tate witnesses were biased," so "the credible evidence does not support a finding of guilt"; and (2) the "State failed to prove beyond a reasonable doubt that Ridder's defense of justification did not exist." We review this claim for correction of errors at law, giving high deference to the verdict. *State v. Burns*, 988 N.W.2d 352, 370 (Iowa 2023).

We dispose of Ridder's first argument with the principle that it's not our role "to pass upon the credibility of witnesses" in reviewing the sufficiency of the evidence; that role is reserved for the jury. *See State v. Brimmer*, 983 N.W.2d 247, 256 (Iowa 2022). While Ridder would like us to adopt his version of events on appeal, "[o]ur system of justice vests the jury with the function of evaluating a witness's credibility." *State v. Huntley*, No. 21-1244, 2022 WL 17481315, at *5 (Iowa Ct. App. Dec. 7, 2022) (citation omitted) (rejecting sufficiency-of-the-evidence claim that was based almost entirely on defendant's testimony and mostly consisted of attacks on the victim's credibility). "Appellate review of the jury's verdict is not the trial redux." *State v. Mathis*, 971 N.W.2d 514, 519 (Iowa 2022).

Turning to Ridder's primary argument, he submits the State failed to prove he was not justified.[1] According to Ridder, once D.M. shoved him, he had a legal right to use the starter pistol in a threatening manner to ensure his own safety.

---

[1] We note Ridder does not claim that the State failed to establish any of the elements in the marshalling instruction for second-degree harassment. His challenge is instead limited to the State's freestanding burden to prove he was not justified as laid out in the reasonable-force and justification instructions, which

The jury was instructed that Ridder would be "justified in using reasonable force if he reasonably believed that such force was necessary to defend himself from any actual or imminent use of unlawful force." "Reasonable force" was defined as "only the amount of force a reasonable person would find necessary to use under the circumstances to prevent injury." The jury was further instructed that a "person who is not engaged in illegal activity has no duty to retreat from any place where the person is lawfully present before using force." Finally, the instructions stated Ridder was not justified if, among other things, he either (1) did not have a reasonable belief that it was necessary to use force to prevent an injury or loss or (2) used unreasonable force under the circumstances.

Viewing the evidence in the light most favorable to the State, a rational jury could find that Ridder was the aggressor in the dispute. True, the evidence is undisputed that D.M. shoved Ridder. But the jury was free to believe D.M.'s testimony that he did so to protect himself by creating space between him and Ridder. *See State v. Liggins*, 557 N.W.2d 263, 269 (Iowa 1996) ("A jury is free to believe or disbelieve any testimony as it chooses . . . ."). Using its common sense, the jury could have reasonably concluded that Ridder did not need to take any further actions to defend himself from the actual or imminent use of unlawful force. But that's not what happened. Instead, the jury heard testimony that Ridder told D.M., "'I'm going to kill your freaking ass," took what looked like a pistol from his truck, and pointed it at D.M. and M.L.M.

---

were given to the jury without objection. *See State v. Lacey*, 968 N.W.2d 792, 802 (Iowa 2021) ("Where, as here, the jury was instructed without objection, the jury instructions are the law of the case for the purposes of reviewing the sufficiency of the evidence.").

From this, a rational jury could conclude that Ridder was unreasonable in believing his use of force was necessary and that the force he used was unreasonable under the circumstances. We therefore conclude the State provided substantial evidence that Ridder was not justified, and we affirm the conviction for second-degree harassment.

**AFFIRMED.**