STATE of Iowa, Appellee,

v.

Stanley Carter LIGGINS, Appellant.

No. 95–1422.

Supreme Court of Iowa.

Dec. 18, 1996.

Kent A. Simmons, Davenport, for appellant.

Thomas J. Miller, Attorney General, Richard J. Bennett, Assistant Attorney General, William E. Davis, County Attorney, and Julie Walton, Assistant County Attorney, for appellee.

Considered by HARRIS, P.J., and CARTER, NEUMAN, SNELL, and ANDREASEN, JJ.

ANDREASEN, Justice.

Defendant Stanley Liggins was charged and convicted of first-degree murder. On appeal, Liggins claims that the State failed to establish territorial jurisdiction for the murder charge, the district court erred in its jury instructions, the court erred in admitting a witness's deposition at trial, and there was insufficient evidence to support his conviction. We affirm.

I.  *Background Facts and Proceedings.*

This appeal is from Liggins' second trial on the charges surrounding the death of a nine-year-old girl. We stated the background facts in Liggins' prior appeal:

> The deceased body of Jennifer Lewis was found on an elementary school lot in Davenport, Scott County, Iowa at approximately 9:00 p.m. on September 17, 1990. Her body had been burned. Upon further medical examination it was determined that death was caused by manual strangulation, that she had been sexually abused prior to her death, and that she was not alive at the time her body was burned. Jennifer, who lived with her mother Sherry Glenn and her stepfather Joseph Glenn in Rock Island, Illinois, had last been seen at approximately 6:30 p.m. purchasing gum at Mac's Liquor Store in Rock Island, Illinois. Jennifer's death occurred four days before her tenth birthday.

*State v. Liggins,* 524 N.W.2d 181, 183 (Iowa 1994) [hereinafter *Liggins I* ].

On July 27, 1992, a trial information was filed in Scott County, Iowa, charging Liggins with first-degree murder, willful injury, first-degree sexual abuse, and first-degree kidnapping. He entered not guilty pleas. Liggins was convicted on all counts in 1993.

Liggins appealed, and, in *Liggins I*, we reversed his convictions. Specifically, we reversed his willful injury, sexual abuse, and kidnapping convictions because there was insufficient evidence to prove that those offenses were committed in Iowa. *Id.* at 186. We also concluded there was substantial evidence to overcome Liggins' motion for a judgment of acquittal on the murder charge. *Id.* at 188. However, we reversed Liggins' conviction for first-degree murder and remanded for retrial, based upon the improper admission of evidence of Liggins' involvement in drug trafficking. *Id.* at 188–89.

In July 1995, Liggins was tried again for first-degree murder under the alternative theories of premeditated murder and felony murder. Prior to trial, Liggins filed a motion for adjudication of law points, arguing that the State could not pursue a felony-murder theory because of our decision in *Liggins I*. The district court overruled the motion, and evidence of the underlying felonies was admitted. The jury returned a guilty verdict, and Liggins was sentenced to life imprisonment. He filed timely notice of appeal.

On appeal, Liggins claims: (1) the State failed to establish territorial jurisdiction for the murder charge; (2) the district court erred in its jury instructions; (3) the district court erred in admitting a witness's deposition at trial; and (4) there was insufficient evidence to prove beyond a reasonable doubt that he was the person who killed Jennifer Lewis. Our scope of review is for the correction of errors at law. Iowa R.App. P. 4. Our review of the constitutional claims is de novo. *State v. White*, 545 N.W.2d 552, 554 (Iowa 1996).

## II. *Territorial Jurisdiction.*

■ Liggins' first claim is that the State did not produce sufficient evidence of territorial jurisdiction to corroborate the permissible inference that Jennifer died in Iowa, and that the district court's failure to enter a judgment of acquittal deprived Liggins of his fundamental right to due process. We do not agree.

■ Under the theory of territorial jurisdiction, jurisdiction to subject an accused to criminal prosecution rests in the courts of the state in which the crime was committed. *Liggins I*, 524 N.W.2d at 184. Territorial jurisdiction is an essential element of a crime, and the State is required to prove it beyond a reasonable doubt. *Id.* at 184–85. Iowa Code section 803.1(2) (1993) expands on the theory of criminal territorial jurisdiction and creates a rebuttable presumption of state jurisdiction. The statute provides:

> An offense may be committed partly within this state if conduct which is an element of the offense, or a result which constitutes an element of the offense, occurs within this state. *If the body of a murder victim is found within the state, the death is presumed to have occurred within the state.*

Iowa Code § 803.1(2) (emphasis added).

At Liggins' retrial, the district court instructed the jury on the statutory presumption. In its instruction, the court told the jurors "If you find that Jennifer Lewis' body was found within the State of Iowa, you are allowed, but not required, to conclude that the death of Jennifer Lewis occurred within the State of Iowa."

This instruction is virtually identical to the jury instruction given in Liggins' first trial, in which he also challenged Iowa's territorial jurisdiction. In *Liggins I*, we concluded:

> In a homicide, if the body is discovered and it is not known where the death occurred, the rebuttable presumption or inference is necessary. It is rational to infer from proof of the location of the body that the homicide was committed within the state in which the body was found.... *[W]e conclude there was sufficient evidence to support a finding that Iowa had territorial jurisdiction to prosecute Liggins on the murder charge. ...*

*Liggins I*, 524 N.W.2d at 185 (emphasis added).

Jennifer's body was found in Davenport, Iowa. Further, the evidence in the record does not conclusively establish if she was killed in Iowa or Illinois. We conclude that there was sufficient evidence to establish

Iowa's territorial jurisdiction on the murder charge and that Liggins did not rebut the statutory presumption.

### III. *Jury Instructions.*

Next, Liggins argues that there were errors in the district court's jury instructions. He claims that the district court erred in (1) submitting Instruction No. 23 on participation in a public offense, and (2) submitting other instructions which allowed the jury to consider Liggins' guilt of first-degree murder on an alternative theory of felony murder.

■■■ We review jury instructions to decide if they are correct statements of the law and are supported by substantial evidence. *Collister v. City of Council Bluffs,* 534 N.W.2d 453, 454 (Iowa 1995). The district court has a duty to instruct fully and fairly on the law regarding all issues raised by the evidence. Iowa R.Crim. P. 18(5)(f); *State v. Stallings,* 541 N.W.2d 855, 857 (Iowa 1995). The court may phrase the instructions in its own words as long as the instructions given fully and fairly advise the jury of the issues it is to decide and the law which is applicable. *Stallings,* 541 N.W.2d at 857. When a single instruction is challenged, it will be judged in context with other instructions relating to the criminal charge, not in isolation. *Id.*

### A. Jury Instruction No. 23.

■■■ At Liggins' retrial, the district court submitted the following instruction to the jury:

> A person participates in an offense beginning with the first act done toward the commission of the offense and ending when a person has been arrested or has escaped from pursuers.

Liggins claims this instruction caused the jury to misunderstand the proof necessary for the essential element of jurisdiction, abrogating the requirement of finding jurisdiction by proof beyond a reasonable doubt. In other words, Liggins argues that the instruction told the jury that it did not need to determine where Jennifer's death occurred. We find no error in the submission of the instruction.

Instruction No. 23 is a correct statement of Iowa law. It is based on Iowa Code section 702.13, which defines "participating in a public offense," and is nearly identical to Iowa Criminal Jury Instruction 200.6 (1988). A conviction for first-degree murder premised on felony murder requires a finding that a defendant was "participating" in a forcible felony. Iowa Code § 707.2(2); *Conner v. State,* 362 N.W.2d 449, 455 (Iowa 1985). Therefore, it is important to define "participation." The definition contained in Instruction No. 23 was used to define the concept of "participating in a forcible felony" for purposes of the felony-murder rule. In fact, the uniform instruction for felony murder, Iowa Criminal Jury Instruction 700.2, recommends using Iowa Criminal Jury Instruction 200.6, which cites Iowa Code section 702.13 as its authority, to define "participation."

■■■ Contrary to Liggins' argument, the statutory definition in Iowa Code section 702.13 does not apply solely to joint criminal conduct. In *State v. Johnson,* 291 N.W.2d 6 (Iowa 1980), we held that the state legislature did not intend "participation" to mean "joint conduct." *Johnson,* 291 N.W.2d at 9. Also, no portion of Instruction No. 23 indicates that the jury was supposed to use it to decide the issue of jurisdiction instead of applying it solely to the issue of felony murder.

We conclude that, because Liggins was tried under the theory of felony murder, the district court did not err in submitting Instruction No. 23, which merely defined the concept of participation in a felony.

### B. Instructions Involving Felony Murder.

■■■ Liggins next argues that the district court erred in its instructions concerning the willful injury, sexual abuse, and kidnapping charges. Specifically, he contends the instructions were in violation of our holding in *Liggins I* that none of the elements of the forcible felonies could be proven to have occurred in Iowa. We disagree.

At Liggins' retrial, evidence was admitted concerning the willful injury, sexual abuse, and kidnapping of Jennifer. Over Liggins' objection, the district court instructed the

jury on both theories of guilt: premeditated murder and felony murder. In its marshaling instruction, the jury was instructed that it must find:

> 4. The defendant either
>
> (a) acted willfully, deliberately, premeditatedly and with a specific intent to kill Jennifer Lewis; or
>
> (b) was participating in the offense of Willful Injury, Sexual Abuse or Kidnapping of or to Jennifer Lewis as defined in Instruction No. 23.

Consistent with the felony-murder theory of guilt, the court also instructed the jury on the elements of the underlying theories.

Liggins claims that, with these instructions, the district court judge essentially tried him again for willful injury, sexual abuse, and kidnapping. However, none of those instructions sought or authorized a jury determination of where those crimes had been committed. In other words, those instructions did not include a jurisdictional element, as did the murder instruction. Further, no verdict forms for the underlying felonies were issued to the jury.

Liggins also argues that, based on our reversal of the convictions for the underlying felonies in *Liggins I*, we held that the felony-murder theory could not be pursued at his retrial. This argument is without merit. In *Liggins I*, we stated "[t]here is substantial evidence that the perpetrator of the crime acted with malice aforethought and was either participating in a forcible felony or acted willfully, deliberately, premeditatedly, and with specific intent to kill." *Liggins I*, 524 N.W.2d at 186.

■■■ The fact that Iowa did not have jurisdiction to convict Liggins of the underlying felonies does not mean those crimes cannot be used to establish felony murder at retrial. The jury was never asked to determine where the underlying felonies were committed, and they were never asked to convict Liggins of the underlying felonies. Participation in a felony for the felony-murder rule is not the same as completion and conviction of the underlying felony. *See State v. Phams*, 342 N.W.2d 792, 795 (Iowa 1983) (State need only prove participation,

not successful completion, of the offense). It is not necessary to prove commission of an underlying felony in order to convict a defendant of felony murder. *State v. Walters*, 426 N.W.2d 136, 141 (Iowa 1988). All that is required is proof that the defendant was participating in the underlying felony. *Id.* It is not necessary to prove that Liggins' participation in the underlying felonies occurred in Iowa.

■■■ Liggins also contends that the territorial jurisdiction instruction (Instruction No. 24) allowed the jury to find that the underlying felonies occurred fully or partly in Iowa. This argument is also without merit. Instruction No. 24 clearly relates only to the marshaling instruction for murder, because that was the only instruction containing a jurisdictional element. There is no basis to conclude that the jury's finding of jurisdiction for murder was based on anything other than the presence of Jennifer's body in Iowa, which was proper.

Finally, Liggins contends that submission of the instructions on the felony-murder theory violated his double jeopardy rights based on the results of *Liggins I*. We find no violation. The Double Jeopardy Clause of the United States Constitution protects against a second prosecution for the same offense after acquittal. U.S. Const. amend. V; *Dressler v. Iowa Dep't of Transp.*, 542 N.W.2d 563, 565 (Iowa 1996). Even assuming that our holding in *Liggins I* is an acquittal of Liggins for the underlying felonies, he was not prosecuted for those offenses in his retrial.

We conclude the jury instructions are correct statements of the law and are supported by substantial evidence.

### IV. *Admission of Deposition.*

■■■ Liggins argues that the district court erred in admitting a witness's deposition, thereby depriving him of his Sixth Amendment rights to confrontation and cross-examination, and his right to a fair trial. Because Liggins' Sixth Amendment rights are implicated, our review of the district court's findings is de novo. *State v. Rojas*, 524 N.W.2d 659, 662 (Iowa 1994).

At Liggins' first trial, Lloyd Eston testified. His testimony related to his observation of a car similar to Liggins', on the night of the murder, near the school where Jennifer's body was found. After Eston attempted to give testimony, the district court declared him to be unavailable by reason of mental infirmity, pursuant to Iowa Rule of Evidence 804(a)(4). As a result, the court allowed Eston's deposition to be read into evidence. During Liggins' second trial, the State informed the court that Eston had died after the first trial. Following an objection by Liggins, the court ruled that the State could introduce Eston's testimony from the first trial and could read the deposition into evidence. At a later point in the trial, the State learned Eston was not deceased. The State then produced him in court, and, after examination, the parties elected to stand on the record made and not present him to the jury.

Liggins claims the court erred in concluding that Eston was unavailable under Iowa Rule of Evidence 804(a)(4) and in admitting Eston's deposition. Our review of the record indicates that Eston was "unavailable" to testify at Liggins' first trial. At the time, Eston was seventy-six years old. He admitted that he had trouble with his memory, and he exhibited confusion and disorientation. The court observed this behavior on the stand and made its determination based on Eston's actions.

The district court did not abuse its discretion in admitting Eston's deposition at the second trial. Iowa Rule of Evidence 804(b)(1) permits the use of former testimony, including depositions, at a later trial where the declarant is "unavailable as a witness." *State v. Gregg*, 464 N.W.2d 431, 432 n. 1 (Iowa 1990). At a hearing during Liggins' second trial, the court correctly ruled that Eston was not available under Iowa Rule of Evidence 804(a)(4). Further, at Eston's deposition, defense counsel had the opportunity to cross-examine Eston.

We conclude there is no violation of Liggins' Sixth Amendment rights because the State proved that Eston was "unavailable," and there is no evidence in the record that Eston's deposition is not reliable testimony.

*See Ohio v. Roberts*, 448 U.S. 56, 65, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597, 607 (1980).

### V. *Sufficiency of the Evidence.*

Liggins' final argument is that there was insufficient evidence to prove beyond a reasonable doubt that he was the person who killed Jennifer Lewis.

Our standard of review is well established. When reviewing a conviction for insufficient evidence, we must uphold a jury verdict unless the record lacks substantial evidence to support the charge. *State v. Miller*, 542 N.W.2d 241, 245 (Iowa 1995). In making this determination, we consider all the evidence in the light most favorable to the State, giving the State all reasonable inferences and presumptions that the evidence will bear. *State v. Uthe*, 542 N.W.2d 810, 815 (Iowa 1996). Evidence is substantial if it could convince a rational fact finder that the defendant is guilty beyond a reasonable doubt. *State v. Bayles*, 551 N.W.2d 600, 608 (Iowa 1996). A jury is free to believe or disbelieve any testimony as it chooses and to give as much weight to the evidence as, in its judgment, such evidence should receive. *Liggins I*, 524 N.W.2d at 186. Direct and circumstantial evidence are equally probative. Iowa R.App. P. 14(f)(16); *Bayles*, 551 N.W.2d at 608.

Upon our review of the record, we conclude there is sufficient evidence to support Liggins' conviction for first-degree murder. The testimony at Liggins' second trial was substantially similar to the testimony in his first trial. In *Liggins I*, after reviewing all of the evidence, we concluded there was substantial evidence to overcome Liggins' motion for a judgment of acquittal on the murder charge. *Liggins I*, 524 N.W.2d at 188.

In *Liggins I*, we found that Liggins' confession to a fellow inmate was corroborated by sufficient circumstantial evidence. *Id.* at 187. This evidence consisted of the following: Liggins was a regular visitor to Jennifer's parents' house. Jennifer knew him and the distinctive car he drove. On the night of Jennifer's murder, Jennifer left her house to purchase gum for Liggins at a nearby liquor

store. Liggins, who had been visiting, left the house shortly after Jennifer. Liggins was seen near the liquor store while Jennifer was there. No witness saw Jennifer alive after she left the liquor store. At least two witnesses saw a car similar to Liggins near the school where Jennifer's burned body was found. Liggins' girlfriend smelled an odor of gasoline in his car the day after Jennifer's death, and police found a gas can in Liggins' car which bore his fingerprints. Finally, on different occasions Liggins gave false statements and information to investigators.

In addition to that testimony, additional evidence was presented at the second trial. A jury could find that after the police seized Liggins' car, they discovered moisture under the rear seat, indicating that the back seat area of the car had been washed. Also, a witness saw a gas can in the back seat of Liggins' car and smelled gas fumes when she walked by the car the day after the murder. Additionally, another witness heard rattling pipes coming from Liggins' motel room at about 4:00 a.m. the day after the murder, indicating that Liggins took a lengthy shower, which lasted approximately forty-five minutes.

Liggins also presented additional evidence at retrial. Most important was the testimony of Paul Bush, a criminalist for the Iowa Division of Criminal Investigation. Bush spent approximately one month examining countless items removed from Liggins' car and motel room, and he found no trace or biological evidence (hair or fibers) that he could associate to Jennifer.

Based on our review of all the evidence in the record, we conclude there was sufficient evidence to support the jury's verdict that Liggins killed Jennifer Lewis. The district court did not err in failing to grant Liggins' motion for a judgment of acquittal.

**AFFIRMED.**