# IN THE SUPREME COURT OF IOWA

No. 16–1525

Filed June 7, 2019

**STATE OF IOWA,**

    Appellee,

vs.

**TIMOTHY ALVIN NEWTON,**

    Appellant.

---

On review from the Iowa Court of Appeals.


Appeal from the Iowa District Court for Ringgold County, Dustria A. Relph, Judge.


Appeal from judgment and sentence for operating while intoxicated and child endangerment. **DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT AND SENTENCE AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR RESENTENCING.**


Mark C. Smith, State Appellate Defender, and Mary K. Conroy, Assistant Appellate Defender, for appellant.


Thomas J. Miller, Attorney General, Timothy M. Hau, Assistant Attorney General, and Clint L. Spurrier, County Attorney, for appellee.

**CADY, Chief Justice.**

In this appeal from a judgment and sentence entered by the district court for operating while intoxicated (OWI), second offense, we consider whether the portion of the statute that makes it unlawful for a person to operate a motor vehicle "[w]hile any amount of a controlled substance is present in the person" violates the Due Process Clause of the United States and Iowa Constitutions. Iowa Code § 321J.2(1)(*c*) (2014).

After we transferred the case to the court of appeals, it found the statute was constitutional but reversed the judgment and sentence after finding the district court failed to engage in a proper colloquy before accepting the stipulation relating to the prior conviction for OWI. It declined to address a claim of sentencing error. On further review, we only address the due process claim and agree with the court of appeals on the disposition of the other issues. We conclude the clause of the OWI statute that makes it unlawful for a person to operate a motor vehicle with any amount of a controlled substance in his or her person does not violate the Due Process Clause of either our Federal or State Constitution as applied to this case.

## I. Background Facts and Proceedings.

Timothy Newton was convicted following a jury trial of the crime of OWI, second offense, in violation of Iowa Code section 321J.2(1) and section 321J.2(2)(*b*). He was also convicted of child endangerment, in violation of section 726.6(1)(*a*) and section 726.6(7). The background facts date back to the early morning hours of September 3, 2014, when a deputy sheriff discovered a sports utility vehicle and a detached trailer stuck in a muddy ditch near the driveway of a home. Newton was in the driver's seat of the vehicle. The engine was running. Newton's seat was

in a reclined position and the driver's door was open. Newton's eleven-year-old son was standing just outside the vehicle.

Newton displayed signs of intoxication or impairment to the deputy sheriff. He appeared oblivious to his surroundings and was disoriented. Newton was also confused, even about the day of the week. He could only vaguely describe how the vehicle and trailer had entered the ditch. Another deputy who arrived shortly after the first deputy performed several field sobriety tests. Newton failed some of the tests and passed others. A preliminary breath test did not detect the presence of alcohol in his body, but the horizontal gaze nystagmus test and other testing indicated to the deputy that Newton was under the influence of a substance. Additionally, the deputy had previously been told by another law enforcement officer that Newton was known to use drugs.

The deputies invoked implied-consent procedures. A urine sample was eventually obtained from Newton and analyzed at the State Department of Criminal Investigation laboratory. The sample was found to contain benzodiazepine, opiates, cocaine metabolites, marijuana metabolites, and tricyclics. A confirmatory test validated these results. Newton was subsequently charged with OWI, second offense, and child endangerment. He filed a motion to suppress the urine sample, claiming the deputy invoked the implied-consent procedures without having reasonable grounds to believe Newton was operating the vehicle while under the influence. The district court found Newton displayed visible signs of impairment at the scene to support reasonable grounds for invoking the implied-consent testing procedures. It denied the motion.

At trial, Newton's father testified that he was driving the vehicle at the time it entered the ditch and that Newton and his son were passengers in the vehicle. Newton's son testified that Newton drove the

vehicle only in an attempt to remove it from the ditch after his grandfather left the scene to find help. Newton's wife and son testified Newton had been ill for several days and had been acting lethargic and exhausted.

The State criminologist who tested the urine sample testified to the results. He also explained the metabolism process of drugs in the human body. He explained that the process causes drug metabolites to pool in a person's bladder and remain there for days. He further explained this process means a urine sample of a person can test positive for drugs or the metabolites of drugs consumed many days prior to the time the sample was taken and long after the effects of the drug have dissipated. Another toxicologist testified consistently with the testimony of the State's criminologist.

The jury was instructed that Newton could be found guilty of operating while intoxicated if he operated a motor vehicle either while (a) under the influence of drugs or (b) having any amount of a controlled substance present, as measured in his blood or urine. The jury was also instructed that each juror did not need to agree to one alternative to return a verdict only that all jurors at least needed to agree to one of either of the alternatives.

The jury returned a verdict of guilty to operating while intoxicated and child endangerment. Newton subsequently stipulated to a previous conviction of operating while intoxicated in 2007 to elevate the OWI conviction to a second offense. At sentencing, the district court denied probation, in part, by mentioning that Newton had been charged with another crime that allegedly occurred after his arrest in this case. Following sentencing, Newton appealed.

Newton raised three issues on appeal. First, he claimed a conviction for operating while intoxicated based on a finding of "any amount" of a controlled substance in his person under Iowa Code section 321J.2(1)(*c*) violated his due process rights under the Federal and State Constitutions.[1] Second, he claimed his stipulation to a prior conviction for OWI was not entered knowingly and voluntarily. Finally, he claimed the district court considered unproven offenses in imposing the sentence.

We transferred the case to the court of appeals. It found section 321J.2(1)(*c*) did not violate the Due Process Clause of either the Federal or State Constitution. However, it found the district court failed to engage in the required colloquy before accepting Newton's stipulation to the prior conviction for OWI. Accordingly, the court of appeals directed that the sentence be vacated and remanded the case for a new hearing on the prior conviction. It declined to address the claim of sentencing error concerning the prior unproven offense.

Newton sought, and we granted, further review. On further review, we only consider Newton's claim that his rights under the Due Process Clause of the State and Federal Constitutions were violated when he was prosecuted for having "any amount" of a controlled substance in his urine. As to the two remaining claims, we agree with the analysis and conclusions of the court of appeals. The case must be returned to the

---

[1]A general verdict must reveal the basis for the guilty verdict when a defendant is charged under a statute with alternative crimes. *See State v. Lukins*, 846 N.W.2d 902, 912 (Iowa 2014) (rejecting guilty verdict when court failed to determine whether defendant was guilty under Iowa Code section 321J.2(1)(*a*) (2011), operating under the influence of alcohol, drugs, or a combination of the two, or section 321J.2(1)(*b*), operating with an alcohol concentration of .08 or more). *But see* 2019 Iowa Legis. Serv. S.F. 589, § 32 (West) (codified at Iowa Code § 814.28 (2019)) (barring appellate revision of a verdict "on the basis of a defective or insufficient theory if one or more of the theories presented and described in the complaint . . . is sufficient to sustain the verdict on at least one count").

district court for a new multiple-offender hearing pursuant to the procedures established in *State v. Harrington*, 893 N.W.2d 36, 47 (Iowa 2017). Additionally, because the case must be returned for entry of a new judgment and resentencing, we agree it is unnecessary to address the claim of sentencing, error raised in this case.

In regard to the Due Process Claim, Newton asserts the "any amount" standard under Iowa Code section 321J.2(1)(*c*) is vague and not rationally related to the purpose of the statute. Newton asserts the statute is vague because it fails to provide fair notice of when conduct is prohibited because a urine sample can contain metabolites or derivatives of a controlled substance days after use of the controlled substance and after impairment from the drug has dissipated. He further claims these consequences can lead to arbitrary arrests and prosecutions. Newton further asserts a substantive due process claim. He claims the "any amount" standard is not rationally related to a legitimate highway safety purpose, or any other governmental interest, under the statute.

## II. Standard of Review.

Our review of constitutional challenges to a statute is de novo. *Taft v. Iowa Dist. Ct.*, 879 N.W.2d 634, 638 (Iowa 2016). Because we presume statutes are constitutional, " '[t]he challenger bears a heavy burden, because it must prove the unconstitutionality beyond a reasonable doubt.' " *Id.* (alteration in original) (quoting *State v. Hernandez-Lopez*, 639 N.W.2d 226, 233 (Iowa 2002)). "Such a party must negate every reasonable basis upon which the court could hold the statute constitutional." *State v. Biddle*, 652 N.W.2d 191, 200 (Iowa 2002).

### III. Due Process of Law.

**A. Preservation of Error.** The State claims Newton failed to preserve error because he was required to raise his due process claim in district court by filing a motion to dismiss the trial information no later than forty days after the arraignment. It argued his failure to do so constituted a waiver of the issue on appeal. *See* Iowa R. Crim. P. 2.11(2)(*b*), (3), (4). The State, however, did not object to the claim on the ground of untimeliness when it was raised by Newton in the district court on the first day of trial. Instead, the State resisted the claim on the merits, and the district court fully considered the issue and made a ruling on the merits. Consequently, the State waived any timeliness objection on appeal by failing to make it in district court. *See State v. Tubbs*, 690 N.W.2d 911, 914 (Iowa 2005) (rejecting consideration of the State's timeliness objection due to its failure to raise the issue at the district court level).

**B. Standing.** The State also claims Newton lacks standing to bring a facial challenge to the statute because it is not vague as applied to him. The State points out that Newton's facial challenge rests on the absence of notice to drivers who violate the statute when a trace amount of a controlled substance remains in the bladder after impairment associated with the use of the drug has ended. It argues the statute is not vague as applied to Newton because his conduct at the time of the stop gave the arresting officers reasonable grounds to believe he was under the influence at the time.

Ordinarily, if a statute is not unconstitutional as applied to the litigant who brings the claim, the litigant has no standing to argue the statute as unconstitutional on its face. *See State v. Hunter*, 550 N.W.2d 460, 463–64 (Iowa 1996), *overruled on other grounds by State v.*

*Robinson*, 618 N.W.2d 306, 312 (Iowa 2000) (en banc). While exceptions exist, none are applicable to this case. Accordingly, we will review Newton's claim to first determine if the statute was vague as applied to him. Newton argues his conduct at the scene of the stop was the result of an illness, implying that any amount of drugs in his urine sample was from past use and was not indicative of impairment. He argues that the absence of a specific threshold amount renders the statute vague and that this claimed deficiency applies to the circumstances of his case.

**C. Due Process Challenge to Iowa Code Section 321J.2(1)(*c*).** Iowa Code section 321J.2(1) criminalizes the operation of a motor vehicle in this state while the operator is under the influence under three conditions. The first condition is when the driver is under the influence of an alcoholic beverage or other drug or a combination of such substances. *Id.* § 321J.2(1)(*a*). The second condition is when the driver has an alcohol concentration of .08 or more. *Id.* § 321J.2(1)(*b*). The third condition is when the driver has "any amount of a controlled substance" present in his or her person "as measured in the person's blood or urine." *Id.* § 321J.2(1)(*c*). The purpose of the statute is to protect Iowans from the risk of injury or death caused by people who drive motor vehicles after drinking alcoholic beverages or using other intoxicating drugs. *See State v. Childs*, 898 N.W.2d 177, 183 (Iowa 2017) (recognizing purpose of OWI statute); *State v. Comried*, 693 N.W.2d 773, 775 (Iowa 2005). It is common knowledge that the consumption of alcohol and other drugs can impair the ability to safely operate a motor vehicle.

At the same time, all statutes that govern the conduct of people, regardless of their compelling purpose, must comply with the fundamental concepts of fairness implicit in the constitutional right to

"due process of law." U.S. Const. amend. XIV, § 1; Iowa Const. art. I, § 9 (due process of law). One such concept is the prohibition against vague statutes. The Due Process Clauses of the United States and Iowa Constitutions prohibit vague statutes. *See State v. Musser*, 721 N.W.2d 734, 745 (Iowa 2006). The clause is broad and captures the common concept that all laws are required to give people of ordinary intelligence fair warning of the prohibited conduct so they will have a reasonable opportunity to navigate through life by engaging in lawful conduct and spurning unlawful conduct. *Id.* No law can become a trap for the innocent. *See State v. Bower*, 725 N.W.2d 435, 441 (Iowa 2010); *see also Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S. Ct. 2294, 2299 (1972). Thus, the general touchstone of vagueness is whether the statute itself, or as construed, "made it reasonably clear at the relevant time that the defendant's conduct was criminal." *State v. Lanier*, 520 U.S. 259, 267, 117 S. Ct. 1219, 1225 (1997). Additionally, the concept of vagueness not only is tied to the requirement of adequate notice, it also exists to prevent arbitrary or discriminatory law enforcement and prohibits statutes that threaten substantial amounts of constitutionally protected activities. *See State v. Nail*, 743 N.W.2d 535, 539 (Iowa 2007).

Likewise, the substantive guarantees of due process under both Federal and State Constitutions prohibits government from enacting laws that infringe upon "rights 'implicit in the concept of ordered liberty.' " *Hernandez-Lopez*, 639 N.W.2d at 237 (quoting *United States v. Salerno*, 481 U.S. 739, 746, 107 S. Ct. 2095, 2101 (1987)). When the right at stake is not fundamental, as in this case, this component of due process requires a reasonable fit between the purpose of the law and the means used under the law to advance that purpose. *See King v. State*, 818 N.W.2d 1, 27 (Iowa 2012).

While we reserve the right to apply the due process provisions of the Federal and State Constitutions independently, we find no reason in this case to use a different analysis or to reach different outcomes. Thus, in this case, our analysis under both constitutions is the same.

Newton breaks down his due process claim into two parts. Under the first, he asserts the "any amount" standard under Iowa Code section 321.2(1)(*c*) is impermissibly vague and fails to reasonably apprise drivers like him of the prohibited conduct under the statute. Under the second part, he claims the statute violates due process because it is not rationally related to its objective of curtailing impaired driving.

Both components of the claim are built on the same foundation. Newton relies on scientific evidence presented at trial to establish that the legal standard of driving with "any amount" of a controlled substance in the body can be violated when a driver operates a motor vehicle days after consuming a controlled substance and days after the effects or impairment of the drug have dissipated. It is an outcome that can occur when a urine sample, as opposed to a blood sample, is used to test for the presence of a controlled substance under the statute. As established at trial, it can occur due to the manner in which a controlled substance metabolizes in the human body. As drugs are metabolized in the body and eventually expelled, the drug metabolites pool in a person's urine. The metabolites will remain in the urine for days or longer until fully discharged. Thus, a urine sample tested for the presence of the controlled substance can detect a drug long after consumption and after the effects of the drug have dissipated. Based on the evidence that the criminal statute can capture the drivers who are not impaired, Newton argues it both fails to give persons without scientific knowledge of

metabolism, like him, fair warning of the prohibited conduct and has an inadequate fit to the objective of keeping impaired drivers off the road.

A statute that criminalizes driving a motor vehicle with a trace amount of metabolites of a controlled substance stored in the body long after the impairment has dissipated brings these two important constitutional due process principles at issue in this case into play. Yet, the "any amount" criminal standard cannot be viewed in isolation because it does not operate standing alone. Instead, the challenged statute must be viewed in the broader "statutory scheme of which it is a part." *Robinson*, 618 N.W.2d at 314–15. Thus, the question we face is whether the statute when read together with associated laws adequately informs persons of ordinary intelligence of the proscribed criminal conduct. *See Musser*, 721 N.W.2d at 745.

Iowa Code section 321J.2(1)(*c*) does not operate to criminally punish the conduct of people who drive with any amount of a controlled substance in the body until other statutory requirements first come into play. First, section 321J.2(1)(*c*) only criminalizes driving with "any amount of a controlled substance . . . present in the person, as measured in the person's blood or urine." *Id.* § 321J.2(1)(*c*). This standard means no prosecution can occur until a blood or urine sample is obtained and tested. *Id.* Second, a blood or urine sample can only be obtained from a driver pursuant to the implied-consent law or the companion procedures governing the withdrawal of a specimen under special circumstances. *See id.* § 321J.6 (governing implied-consent testing); *see also id.* §§ 321J.7; .10; .10A (governing specific testing procedures in special circumstances). Under the implied-consent laws, a urine sample can only be obtained from a driver and tested for a controlled substance if a peace officer first has reasonable grounds to believe the driver was

violating section 321J.2(1) and at least one of seven implied-consent conditions is present, including the condition that a peace officer administered a preliminary breath screening test that indicated an alcohol concentration level less than the prohibited legal level and has reasonable grounds to believe the driver was under the influence of a controlled substance, a drug other than alcohol, or a combination. *Id.* §§ 321J.2(1); .6(1)(*a*)–(*g*). Likewise, the special procedures require the peace officer to have reasonable grounds to believe that the statute was violated. *Id.* §§ 321J.10; .10A. Thus, associated provisions of the operating-while-intoxicated laws supplement the "any amount" standard to require the existence of circumstances of impairment or other reasonable grounds of a violation at or near the time of the stop before a urine sample can be requested and obtained. Although the implied-consent requirements are not elements of the crime, they nevertheless are legal requirements that are determined by the court and restrain law enforcement and the prosecution of the crime.

We have previously recognized that the "any amount" standard of section 321J.2(1)(*c*) is strict, but its unsparing approach is ameliorated by the requirements that the traffic stop be lawful and the police officer have reasonable grounds to believe the driver was impaired or otherwise in violation of the statute. *Childs*, 898 N.W.2d at 185. Importantly, the standard cannot be met without a blood or urine test. *State v. Myers*, ___ N.W.2d ___ (Iowa 2019). If the implied-consent law was not followed, the test results cannot be used against the driver in a criminal prosecution. *State v. Albrecht*, 657 N.W.2d 474, 477 (Iowa 2003). Thus, a properly invoked blood or urine test is part and parcel to a criminal prosecution under Iowa Code section 321J.2(1)(*c*).

In the same way, the statutory requirement of reasonable grounds helps supply the notice required under the Due Process Clause to drivers that their conduct may be in violation of the statute. Just as a peace officer must possess reasonable grounds to believe a driver is in violation of the statute, drivers possess common knowledge that the consumption of alcoholic beverages and controlled substances alter thinking and impair physical actions. Persons of ordinary intelligence know that their conduct may be in violation of the statute if they drive a motor vehicle after intoxicating drugs are consumed. We previously recognized in *State v. Bock* how this proposition applies to the driving while intoxicated statutes to supply reasonable notice to drivers who consume alcoholic beverages, when we said,

> Although persons engaging in consumption of alcoholic beverages may not be able to ascertain precisely when the concentration of alcohol in their blood, breath, or urine reaches the proscribed level, they should, in the exercise of reasonable intelligence, understand what type of conduct places them in jeopardy of violating the statute. We believe a realization of this potential jeopardy of violating the statute is sufficient to satisfy the requirements of due process.

357 N.W.2d 29, 34 (Iowa 1984). The proposition applies in the same way to controlled substances. While the notice is not flawless, it is reasonable under the circumstances. Drivers of ordinary intelligence know they risk violating Iowa Code section 321J.2(1)(*c*) when they drive after consuming or ingesting intoxicants or controlled substances to the point that others can observe reasonable grounds of a violation of the statute. On the other hand, when a driver has no reason to know she or he may be driving impaired, a police officer is not normally able to observe reasonable grounds that the driver has violated the statute to invoke the testing needed to support a prosecution.

Nevertheless, Newton asserts this notice fails to inform drivers, like himself, who operate a motor vehicle after the effects of using a controlled substance have ended but before the metabolites in the urine have been totally discharged. Under this circumstance, Newton argues the statute does not provide drivers of ordinary intelligence notice that their actions may be in violation of the statute.

We recognize that the constitutional standard at issue in this case is reasonable notice. We also observe that unique challenges exist in providing sufficient notice under section 321J.2(1)(*c*) to satisfy the due process standard, even though the State's interest in regulating drug-impaired driving is compelling. We discussed these challenges and complications in both *Childs* and *Comried* and identified how they help serve to justify a flat ban.[2] *See Childs*, 898 N.W.2d at 184–85; *Comried*, 693 N.W.2d at 776.

We acknowledge the implied-consent law is not a perfect means to steer drivers away from violating the provisions of Iowa Code section 321J.2(1)(*c*) as they navigate through life. Yet, the central imperfection of the statutory scheme, as revealed by Newton's argument, is when the grounds to initiate the implied-consent testing may be unrelated to observations of impaired driving. For example, under the statutory scheme, a peace officer with knowledge of the process of the metabolism of marijuana in the body and with reasonable grounds to believe a person has ingested marijuana within a week or so of driving could conceivably have reasonable grounds to stop a vehicle for violation section 321J.2(1)(*c*) and invoke the implied-consent testing procedures

---

[2]The strict standard relates in part to the current hurdles in testing drug impairment. *See Childs*, 898 N.W.2d at 184. For example, at this time, there is no device for a peace officer to identify marijuana-impaired driving or even an accepted standard to identify such an impairment. *Id.*

without objective signs of driver impairment. This circumstance could occur because implied consent can be invoked when the police officer has reasonable grounds to believe the driver has "any amount" of a controlled substance in his or her body and one of the seven other conditions exist. *See* Iowa Code § 321J.6. The scientific knowledge of metabolism could supply the reasonable grounds. The same circumstance, however, would not give a driver without scientific knowledge of the process of metabolism notice that driving a vehicle days or weeks after drug use may be a crime under section 321J.2(1)(*c*). The reasonable standard under the Due Process Clause is that of a person of ordinary intelligence, and this standard would not impute scientific knowledge to such a person. Thus, if the deputy sheriff in this case would have invoked implied consent only because he had heard Newton was a drug user and suspected trace amounts of metabolites would be in his body, the question we face would be different.

Notwithstanding, this particular type of due process claim does not exist in this case. In this case, the reasonable grounds by a police officer to invoke the implied-consent testing was based on objective, contemporaneous signs of impaired driving. The district court in this case found the arresting officer had reasonable grounds to invoke implied-consent based on the visible signs of intoxication and impairment exhibited by Newton at the scene of the stop. Although the district court mentioned additional evidence that Newton had been identified as a "drug user," it did not rely on this evidence to find reasonable grounds to invoke implied consent. Newton was prosecuted because he exhibited signs of impairment, and the effects of drug use commonly known by drivers gave him notice that he may be in violation of the law at the time he operated the vehicle.

The due process concerns that a different case would present under the statute are not presented in this case. As the statute is applied to Newton, it provided reasonable notice. Accordingly, the statute does not violate the Due Process Clause as applied to Newton, and he is without standing to assert the claim that the statute is unconstitutional on its face. We reserve judgment on the constitutionality of the statute when the reasonable grounds to invoke implied consent would not involve contemporaneous objective signs of impairment.

Based on the same reasoning, we reject the substantive due process claim raised by Newton. When a prosecution under the statute is driven by reasonable grounds of an ongoing impairment, as in this case, the "any amount" standard is rationally related to the compelling safety concerns of the State. As with the vagueness claim, we reserve judgment under different circumstances.

## IV. Conclusion.

We conclude section 321J.2(1)(*c*) does not violate the requirements of due process under the Federal or State Constitutions as applied to the circumstances of this case. We affirm the decision of the court of appeals, affirm the judgment and sentence of the district court in part and reverse in part, and remand for further proceedings.

**DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT AND SENTENCE AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR RESENTENCING.**

All justices concur except Appel, J., who dissents, and McDonald, J., who takes no part.

**APPEL, Justice (dissenting).**

I respectfully dissent.

First, in parts of the majority opinion, the generic label "due process" is used to describe the plaintiff's claim. The plaintiff, however, seeks to raise two distinct claims under the due process rubric in this appeal.

The first claim relates to vagueness. The plaintiff claims the statute is so vague that a reasonable person cannot comply. Second, he claims that because marijuana metabolites stay in the system for many days long after any impairment in driving, the statute violates substantive due process in seeking to criminalize such conduct. I find the first issue related to fair notice troubling, while the second issue has not been preserved for our review.

On the fair notice issue, the majority cites *State v. Bock*, 357 N.W.2d 29, 33–34 (Iowa 1984) (en banc), for the proposition that the statute here is not void for vagueness. In *Bock*, we upheld a proscribed threshold for operating a vehicle while intoxicated contained in Iowa law. *See id.* We noted,

> Although persons engaging in consumption of alcoholic beverages may not be able to ascertain precisely when the concentration of alcohol in their blood, breath, or urine reaches the proscribed level, they should, in the exercise of reasonable intelligence, understand what type of conduct places them in jeopardy of violating the statute. We believe a realization of this potential jeopardy of violating the statute is sufficient to satisfy the requirements of due process.

*Id.* at 34. I agree with the result, and even the reasoning, in *Bock*. But the issue here is different. The average person who goes to a bar and consumes a number of alcoholic beverages in a few hours knows, or should know, of the jeopardy. Better not drive. Take a taxi. Go home

and sleep it off. But most people of average intelligence do not know that inactive marijuana metabolites stay in a user's system for days after any potential impairment has vanished.

Indeed, casual marijuana users of ordinary intelligence would be shocked to learn that many days after use and long after any impairment, they might be found intoxicated under the statute because of very small amounts of an inactive marijuana metabolite remaining in the system even though their driving was unimpaired by the past marijuana use. A person who has had a few drinks before driving knows of the risk of *alcohol-based* intoxication, but does not know of the jeopardy posed by ingesting marijuana many days before.

The majority suggests there are protections against arbitrary enforcement because there must be a valid stop and then a valid reason for a urine sample. Of course, anyone can be stopped any time for some kind of traffic violation. That is little protection.

Nonetheless, before a urine sample is obtained, ordinarily there must be probable cause or reasonable suspicion to support the draw. But that is not always the case. The presence of marijuana metabolites in urine might be discovered in cases involving an accident in which the driver is hospitalized and standard medical tests are undertaken. *See, e.g.,* Iowa Code § 147A.8(1) (2017); *see also id.* § 321J.7 (providing for medical testing of unconscious persons or persons incapable of consent or refusal to determine presence of alcohol or controlled substances). In short, the majority's ruling that arbitrary enforcement is not a problem under the statute should be considered limited to the facts of this case and not a blanket blessing under the statute.

On the issue of substantive due process, I have serious doubts on the merits. *See State v. Childs,* 898 N.W.2d 177, 196–201 (Appel, J.,

dissenting). But the issue has not been preserved. *Meier v. Senecaut*, 641 N.W.2d 532, 537–40 (Iowa 2002). Only the question of fair notice was presented to, and ruled upon, by the district court.[3] I thus would not address the issue.

But the use of an overbroad irrebuttable presumption that the presence of a trace of marijuana metabolite in the urine automatically means that the driver was impaired by marijuana is simply irrational. It is defended on the ground that there is no more accurate urine test and that more accurate testing would be too expensive. Think about that proposition. The science behind urine testing is not very accurate, but it satisfies due process, apparently, because it is cheap and leads to more convictions, many of which may apply to people that have not been driving while impaired by the use of marijuana. Because of the poor fit between a trace of metabolite in the urine and the purpose of the statute on punishing impaired drivers, the statute strikes me as presenting a substantive due process problem. *State v. Hernandez-Lopez*, 639 N.W.2d 226, 238 (Iowa 2002).

---

[3]The parties agreed to consider the due process issue at the close of the State's evidence. The defendant raised the issue during consideration of the jury instructions. In objecting to the proposed jury instruction, the defendant stated that "we're still relying on the issue that the Iowa Code 321J.2(1) is unconstitutionally vague as it applies to defendant in violation of the due process clause of the Fourteenth Amendment to the United States [Constitution] and Article I, Section 9 of the Iowa Constitution, that being the implied consent and the two-hour time span and the presence of any amount of controlled substance in a person's urine or blood can amount to operating while intoxicated." The district court overruled the objections.