# IN THE COURT OF APPEALS OF IOWA

No. 18-0853
Filed February 19, 2020

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**CHUNG CHRIS LO,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Dallas County, Richard B. Clogg,

Judge.

        Chung Chris Lo appeals his conviction for first-degree fraudulent practice.

**AFFIRMED.**

        R. Ben Stone of Parrish Kruidenier Dunn Boles Gribble Gentry Brown &

Bergmann LLP, Des Moines, for appellant.

        Thomas J. Miller, Attorney General, and Martha E. Trout, Assistant Attorney

General, for appellee.

        Heard by Vaitheswaran, P.J., and Doyle and May, JJ.

**DOYLE, Judge.**

Chung Chris Lo appeals his conviction for first-degree fraudulent practice. He contends his trial counsel provided ineffective assistance by failing to argue the statute defining the charge is unconstitutionally vague and therefore void. In the alternative, Lo challenges the sufficiency of the evidence supporting his conviction, the district court's failure to instruct the jury on mistake of law, and its denial of his motion for mistrial.

**I. Background Facts and Proceedings.**

Lo has a federal conviction for mail fraud. In an October 2014 letter, the Iowa Department of Human Services (DHS) informed Lo that he was permanently excluded from participation in the Medicaid program[1] because of that conviction. The letter explains that under the DHS's administrative rules, the sanction precludes him from submitting claims for Medicaid payment personally or through another person or affiliate. *See* Iowa Admin. Code r. 441-79(2)(5)(a).

Lo's wife, Sue, owned and managed Elderly Care of Iowa, LLC (ECI), which provided services to Medicaid recipients. In 2014 and 2015, the DHS investigated ECI for submitting false or fraudulent claims for services. Sue was convicted of third-degree fraudulent practice in February 2016 as a result of that investigation. Because of her conviction, the DHS permanently excluded Sue from participating in the Medicaid program.

---

[1] Medicaid is a joint federal and state program that provides essential health insurance to low income, elderly, disabled, and children. The cost of the program is shared by the federal and state governments, with the federal government paying about sixty percent of the cost and the state paying about forty percent.

Sue sold ECI to Spirit Home Care in December 2015 and began working for Spirit Home Care right after. Lo was granted supervised release from prison in January 2016 and began working for Spirit Home Care the next month. But Spirit Home Care terminated Lo and Sue's employment in April 2016 after learning each had been excluded from participation in the Medicaid program.

In the weeks after Lo and Sue lost their jobs with Spirit Home Care, Vithana David Thavonekham, their nephew, started Senior Assistance of Iowa, LLC (SAI). SAI provided the same services to Medicaid recipients as ECI and Spirit Home Care.[2] Thavonekham opened a checking account for SAI that listed Sue as an authorized signer. And one of Sue's aliases was listed on SAI's partnership contract. In December 2016, Lo reported he was employed by SAI and named Thavonekham as his supervisor. At least one check was issued from SAI to Lo in the amount of $1400.

The Iowa Medicaid Fraud Control Unit investigated SAI and obtained a warrant to search Lo's home in January 2017. It discovered many SAI documents in the house, including insurance documents for Medicaid recipients and care

---

[2] The service provided is called consumer directed attendant care service, which is basically home health aide services provided to the elderly, under the elderly waiver, that need services to stay in their home instead of going to a nursing facility. Those services include housekeeping, helping one with bathing, hygiene, and grocery shopping. Under Iowa's privatized Medicaid program, which began in April 2016, the State pays private managed care organizations (MCOs) to oversee the program. In 2016, the State of Iowa contracted with three MCOs—AmeriHealth Caritas, Amerigroup Iowa, and United Health Care. The MCOs handle the claims payment function of the program and the managing of services for the bulk of the Medicaid population. Under the program, a provider, such as SAI, must enroll through Iowa Medicaid Enterprises to become a provider. A provider contracts with one or more of the MCOs. Individual providers submit claims or bills for payment to a MCO for services the provider provided to Medicaid recipients, and the MCO pays the provider for those claims it finds appropriate.

providers, as well as daily service records. Based on the evidence it obtained, the State charged Lo with first-degree fraudulent practices. A jury found Lo guilty as charged.

### II. Ineffective Assistance of Counsel.

Lo first contends his trial counsel rendered ineffective assistance[3] by failing to argue that his rights under the Due Process Clauses of the United States and Iowa Constitutions were violated when the State prosecuted him under a unconstitutionally vague statute. We review this claim de novo. *See Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012). To succeed, Lo must show counsel breached a duty and prejudice resulted. *See State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003). We may affirm if either element is lacking. *See id.* Although we address a claim of ineffective assistance of counsel on direct appeal if the record is sufficient to decide the issue, *see State v. Ross*, 845 N.W.2d 692, 697 (Iowa 2014), we generally preserve these claims for postconviction-relief proceedings to allow the record to be developed fully, *see State v. Null*, 836 N.W.2d 41, 48 (Iowa 2013).

To succeed on the first prong of the ineffective-assistance test, Lo must show that his "counsel's representation fell below an objective standard of reasonableness." *State v. Ortiz*, 905 N.W.2d 174, 183 (Iowa 2017) (citation omitted). We ask whether, under the circumstances, counsel acted "outside the wide range of professionally competent assistance." *Id.* (citation omitted). And

---

[3] Our supreme court decided recent amendments to Iowa Code section 814.7 (Supp. 2019) prohibiting consideration of ineffective-assistance-of-counsel claims on direct appeal apply only prospectively and do not apply to cases, like this one, pending on July 1, 2019. *See State v. Macke*, 933 N.W.2d 226, 235 (Iowa 2019).

there is a strong presumption that counsel acted reasonably. *See id.* Counsel has no duty to raise a meritless issue. *See id.* So we must determine whether Lo's void-for-vagueness challenge has merit. *See id.*

Both the United States and Iowa Constitutions require that our laws "give people of ordinary intelligence fair warning of the prohibited conduct so they will have a reasonable opportunity to navigate through life by engaging in lawful conduct and spurning unlawful conduct." *State v. Newton*, 929 N.W.2d 250, 255 (Iowa 2019). The question is whether the plain language of the statute or the way it is construed make it reasonably clear that the conduct at issue was criminal. *See id.*

We presume statutes are constitutional and will construe them reasonably to uphold them. *See State v. Showens*, 845 N.W.2d 436, 441 (Iowa 2014). The defendant bears the heavy burden of proving the statute is unconstitutional beyond a reasonable doubt and refuting every reasonable basis on which it could be found to be constitutional. *See State v. Thompson*, 836 N.W.2d 470, 483 (Iowa 2013). If the statute can be construed in more than one manner, we will adopt the constitutional construction. *See id.*

Lo claims counsel had a duty to challenge the constitutionality of Iowa Code section 249A.51 (2017). That section states:

> A person who knowingly makes or causes to be made false statements or misrepresentations of material facts or knowingly fails to disclose material facts in application for payment of services or merchandise rendered or purportedly rendered by a provider participating in the medical assistance program under this chapter commits a fraudulent practice.

Iowa Code § 249A.51. Because the term "participating" is undefined, Lo claims he could not know what acts the statute prohibits.

The State notes that our supreme court has held the term "participating" is "a term of common usage and readily understandable."[4] *See Thongvanh v. State*, 494 N.W.2d 679, 684 (Iowa 1993) (holding no jury instruction on the term "participation" is necessary in prosecution for felony murder). If the meaning of the words used a statute can be "fairly ascertained" by referring to similar statutes, other judicial determinations, the common law, or the dictionary, or if the words have "a common and generally accepted meaning," the statute is not unconstitutionally vague. *See State v. Heinrichs*, 845 N.W.2d 450, 455-56 (Iowa Ct. App. 2013) (citation omitted). It seems clear that a provider "participates" in the Medicaid program by enrolling in the program, providing services or goods to Medicaid recipients, submitting claims to the program for those services or goods, and accepting payment for those services or goods provided. We conclude the

---

[4] We recognize that in *State v. Liggins*, 557 N.W.2d 263, 267 (Iowa 1996), the Iowa Supreme Court stated that "it is important to define 'participation'" in a prosecution for felony murder. But that case involved a murder of a child who had last been seen in Illinois and whose body was discovered in Iowa. *Liggins*, 557 N.W.2d at 265-67. The trial court instructed the jury that "[a] person participates in an offense beginning with the first act done toward the commission of the offense and ending when a person has been arrested or has escaped from pursuers." *Id.* at 267. Liggins challenged the instruction, arguing it eliminated the requirement that the jury determine where the child died as was necessary to establish "the essential element of jurisdiction" under the unique facts of that case. *Id.* at 267. In rejecting Liggins's argument, the supreme court found the instruction "merely defined the concept of participation in a felony," it did so correctly, and nothing suggested the jury use the instruction to decide the issue of jurisdiction rather than the issue of felony murder. *Id.* We view the court's statement that "it is important to define 'participation'" as dicta rather than a requirement that the term be defined in all prosecutions for felony murder, let alone in all criminal prosecutions where the term is used. The *Thongvanh* holding controls.

void-for-vagueness claim has no merit and Lo's counsel had no duty to raise it. So his claim fails on the first prong of the ineffective-assistance test.

In any event, the statute is not unconstitutionally vague as applied to Lo. As used in section 249A.51, the term "participating" does not relate to Lo's conduct but to the conduct of a provider participating in the Medicaid program. Here, that provider is SAI. In other words, when the statute is applied to Lo, it prohibits him from aiding and abetting Thavonekham or Sue in making a material false statement in applying for payment of services rendered by SAI.

Because there is no reasonable probability that the outcome of the trial would have changed even if counsel had raised a void-for-vagueness argument, he cannot meet the second prong of the ineffective-assistance test. *See State v. Virgil*, 895 N.W.2d 873, 882 (Iowa 2017) ("The defendant is prejudiced when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" (citation omitted)).

### III. Sufficiency of the Evidence.

Lo also contends the district court erred in denying his motion for judgment of acquittal because there is insufficient evidence to support his conviction. We review claims on the sufficiency of the evidence to support a conviction for correction of errors at law. *See State v. Coleman*, 907 N.W.2d 124, 134 (Iowa 2018). We consider the record evidence in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence. *See State v. Huser*, 894 N.W.2d 472, 490 (Iowa 2017). We will uphold the trial court's denial of a motion for judgment of acquittal if substantial evidence supports the conviction. *See State v. Harris*, 891 N.W.2d 182, 186 (Iowa 2017). "Evidence

is substantial if it would convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *State v. Henderson*, 908 N.W.2d 868, 875 (Iowa 2018). Evidence is not substantial if it raises only suspicion, speculation, or conjecture. *See Huser*, 894 N.W.2d at 490.

Lo raises the same argument he raised on the definition of "participating" and the lack of evidence showing he participated in the Medicaid program.[5] He argues that the term "participating" in the context of section 249A.51 is too ambiguous for a jury to convict. He asks us to apply the "rule of lenity," which

---

[5] Although his trial counsel did not challenge the use of the term "participating" in the statute as part of a void-for-vagueness argument, counsel did move for judgment of acquittal on the basis that the evidence is insufficient to show Lo participated in the offense. Counsel admitted Lo provided services to Thavonekham but denied the evidence shows that the SAI submitted any false claims for payment or that Lo was an employee of SAI. Counsel argued:

> And as a matter of law, the issue as to whether or not whatever the defendant did or his wife did in concert with Mr. Thavonekham or the defendant constitutes participation as the administrative code provision does not define that word.
>
> And Mr. Gookin [Program Integrity Director for the Iowa Medicaid Program] himself seemed to tell this jury that participation would somehow be tied to an employee based prohibition rather than independent contractor relationship. And I don't believe the evidence shows from the record that the defendant's conduct falls within the definition of an affiliate for purposes of the administrative code section 441-79.2(1).
>
> Now, what is not charged is fraudulent practice for being an excluded person participating in the program. . . . That is the gravamen of the evidence, if it is believed. But that's not what Mr. Lo has been charged with. He's charged with participating either as a principal or aider and abetter in submitting false statements that either say something that's materially false or admit the fact that he's helping as an affiliate, apparently.
>
> And I respectfully submit that there is essentially no evidence whatsoever given the State's failures that I've outlined to submit to matter to the jury and no rational trier of fact, having considered these arguments, could find beyond a reasonable doubt each and every element of the offense charged as either a principal or aiding and abetting or joint criminal conduct.

directs us to construe criminal statutes strictly in favor of the accused. *See State v. Lindell*, 828 N.W.2d 1, 13 (Iowa 2013). But that rule is viewed as a "tie breaker" to be applied only after we exhaust all techniques to interpret the statute and grievous ambiguity still exists. *See id.* (citation omitted). That ambiguity is absent here. We also note that we must construe our statutes "in such a way as to not defeat their plain purpose." *State v. Coleman*, 907 N.W.2d 124, 136 (Iowa 2018) (citation omitted).

Sufficient evidence supports Lo's conviction. Lo concedes that the record reveals he processed paperwork on behalf of a company that provided services under Iowa Medicaid, helped Thavonekham set up the company with the office of the Iowa Secretary of State, lent Thavonekham funds and equipment, helped Thavonekham obtain insurance, answered questions about the billing process, and allowed Thavonekham to use his home as an office. These acts aided and abetted Thavonekham and SAI to obtain Medicaid payments. And the evidence shows Thavonekham and SAI failed to disclose the material fact that the DHS precluded Lo from submitting claims for payment for Medicaid services provided after his termination, either personally or through another person or affiliate. *See* Iowa Admin. Code r. 441-779.2(5)(a) ("[T]ermination from participation shall preclude the person from submitting claims for payment, whether personally or through claims submitted by any other person or affiliate, for any services or supplies except for those services provided before the suspension or termination."). The evidence shows Lo knew he was permanently excluded from participation in the Medicaid program based on the letter the DHS sent him in October 2014. And he knew the information was material because Spirit Home

Care terminated Lo and his wife after learning they were excluded from participating in the program.

Lo claims the State failed to show he understood that assisting his family members constituted the necessary "participation" in the Medicaid program that required his disclosure of his involvement. The court instructed the jury to find Lo guilty of fraudulent practice if the State proved: (1) Lo submitted claims for payment to the Medicaid program *or aided and abetted Sue or Thavonekham in submitting claims for payment*[6]; (2) Lo did so while knowingly failing to disclose that either he or Sue had been terminated from participation in the Medicaid program; and (3) their termination from participation in the Medicaid program was a material fact. The instruction does not require the jury to find that Lo participated in the Medicaid program. Lo never objected to the jury instruction defining fraudulent practice, and it is now the law of the case. *See State v. Taggart*, 430 N.W.2d 423, 425 (Iowa 1988) ("Failure to timely object to an instruction not only waives the right to assert error on appeal, but also 'the instruction, right or wrong, becomes the law of the case.'" (internal citation omitted)). .

Because substantial evidence supports Lo's conviction, we affirm.

---

[6] The instruction does contain an error in that it requires the State prove that "the Defendant, *as an Iowa Medicaid provider*, submitted or caused to be submitted claims for payment to the Medicaid program." (emphasis added). There was no objection to this portion of the instruction, and Lo does not make any argument regarding the error on appeal. But it is clear from the record that the State never argued Lo himself was a Medicaid provider. The State's evidence concerned the second portion of the instruction, which required proof that Lo "did aid and abet Sue Boutdara Lo and/or David Thavonekham in that act." The evidence shows that Sue and Thavonekham were partners in SAI, a Medicaid provider.

**IV. Jury Instructions.**

Lo next contends the district court erred in refusing to give an instruction he requested. We review his claim for correction of errors at law. *See State v. Benson*, 919 N.W.2d 237, 242 (Iowa 2018) (noting we review the refusal to give a requested jury instruction for correction of errors at law). The court must instruct the jury on the applicable law on all material issues in a case. *See State v. Mathias*, 936 N.W.2d 222, 233 (Iowa 2019). The question is whether the instruction accurately states the law and whether substantial evidence supports it. *See State v. Albright*, 925 N.W.2d 144, 157 (Iowa 2019). If an error occurred, we reverse if it prejudiced the defendant. *See id.* But we consider the jury instructions as a whole to determine whether they correctly state the law. *See Benson*, 919 N.W.2d at 242.

Lo challenges the court's instruction on "mistake of law." The trial court submitted a portion of the instruction Lo requested but omitted the following:

> The defendant also claims that at the time SAI was submitting billings to MCOs for payment, he was ignorant of the law that the State deemed his relationship to David Thavonekham or assistance to SAI was prohibited participation in the program and that the law required such participation disclosed to the MCOs. When an act or omission is made mistakes of fact or ignorance of the law, the mistake or ignorance must be because of good faith reasonable belief by the defendant acting as a reasonably careful person under the similar circumstances.

Lo argues the district court erred in eliminating a portion of his requested instruction.

Iowa Code section 701.6 states:

> All persons are presumed to know the law. Evidence of an accused person's ignorance or mistake as to a matter of either fact or law shall be admissible in any case where it shall tend to prove the existence

or nonexistence of some element of the crime with which the person is charged.

Our supreme court has noted that exceptions to the rule that knowledge of the law is irrelevant "are strictly limited and arise primarily in crimes requiring a specific intent or mental state which would tend to be negated by a defendant's ignorance or mistake of law." *State v. Clark*, 346 N.W.2d 510, 512 (Iowa 1984).

Lo again focuses his argument on the use of the term "participating" or "participation," claiming he did not know what acts constituted "participation" in the Medicaid program. But the letter informing Lo of his termination from the Medicaid program states that he is precluded "from submitting claims for payment, 'personally or through claims submitted by another person or affiliate, for any services or supplies except for those services provided before the suspension or termination.'" (quoting Iowa Admin. Code r. 441-79.2(5)(a)). (APP 142) And, as the State notes, Lo was fired from his employment with Spirit Home Care because he had been terminated from participation in the Medicaid program. So even if the court had submitted the instruction with the language Lo requested, the result would have been the same. Lo cannot show the omission of a portion of his requested instruction prejudiced him.

**V. Mistrial.**

Finally, Lo contends the district court abused its discretion in denying his motion for a mistrial. Because the trial court "is in the best position to appraise the effect of any alleged misconduct," *State v. Frei*, 831 N.W.2d 70, 80 (Iowa 2013), *overruled on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 708 (Iowa 2016), it has wide discretion in deciding whether to grant or deny a mistrial,

*State v. Huser*, 894 N.W.2d 472, 498 (Iowa 2017). Generally, we will reverse that discretion on appeal only if the trial court exercised that discretion "on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Huser*, 894 N.W.2d at 498 (citation omitted); *see also State v. Anderson*, 448 N.W.2d 32, 33 (Iowa 1989).

Lo moved for a mistrial based on testimony given by the first witness at trial. His counsel was cross-examining Andrea Geier, who worked as an agent with the Medicaid Fraud Control Unit during its investigation of Lo. When asked what material fact Lo misrepresented in application for Medicaid payment, Greier answered, "That he's an excluded provider." Lo's counsel then asked, "And what evidence do you have that he knowingly caused any bills to be submitted?" Geier replied, "He knowingly entered into a scheme to defraud the Medicaid program into believing that he had nothing to do with Senior Assistance of Iowa. And had they known that the Los were involved, they would not have paid any of the claims." Counsel moved for a mistrial on the basis that Greier gave an improper opinion on an element of the offense.

A witness may not testify about a defendant's guilt or innocence. *See State v. Murphy*, 451 N.W.2d 154, 156 (Iowa 1990). But a witness may testify to an ultimate fact that the jury must determine. *See id.* Lo concedes that Greier did not testify about an ultimate fact of guilt or innocence of the crime that he was "technically charged with" but claims the testimony was "close enough" to prejudice him. He also notes that the trial court never admonished the jury about this testimony. *See State v. Breitbach*, 488 N.W.2d 444, 448 (Iowa 1992) (recognizing

cautionary instructions are sufficient to cure prejudice in all but the most extreme cases).

"A mistrial is appropriate when 'an impartial verdict cannot be reached' or the verdict 'would have to be reversed on appeal due to an obvious procedural error in the trial.'" *State v. Newell*, 710 N.W.2d 6, 32 (Iowa 2006) (citation omitted). The question is "whether the trial court was clearly unreasonable in concluding an impartial verdict could be reached notwithstanding the witness's testimony." *Id.* We conclude it was not. Greier was tasked with investigating SAI for Medicaid fraud. Although she mentions a "scheme" to defraud the Medicaid program, her testimony essentially summarizes the State's theory of the case. The State presented evidence that Lo and his wife knew they were prohibited from working for businesses that submitted claims to Medicaid for services provided to its recipents and withheld that information to keep doing this work. Because Greier's testimony did not render the jury unable to reach an impartial verdict, the trial court was within its discretion to deny Lo's motion for mistrial.

**AFFIRMED.**