# IN THE COURT OF APPEALS OF IOWA

No. 21-0707
Filed November 17, 2022

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JIMMY JACOBY CARR,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Pottawattamie County, Michael D. Hooper, Judge.

The defendant challenges his convictions and sentences.  **AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**

Martha J. Lucey, State Appellate Defender, and Josh Irwin, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Tyler J. Buller (until withdrawal) and Thomas E. Bakke, Assistant Attorneys General, for appellee.

Considered by Bower, C.J., Tabor, J., and Potterfield, S.J.*  Buller, J., takes no part.

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2022).

**POTTERFIELD, Senior Judge.**

Following an incident at a gas station in 2020, Jimmy Carr was charged with attempted murder of a peace officer (count I), robbery in the first degree (count II), assault on a peace officer while using or displaying a dangerous weapon (count III), interference with official acts while using or displaying a dangerous weapon (count IV), and felon in possession of a firearm (count V). A jury acquitted him of attempted murder; found him guilty of lesser-included charges of counts III and IV—assault and interference with official acts, respectively; and found him guilty as charged of first-degree robbery and felon in possession of a firearm.

Carr appeals,[1] arguing (1) the district court erred in not giving the specific instruction on implicit bias that he requested; (2) the court erred in overruling his objection to the instruction on participation in a public offense because it contained an inaccurate statement of law; (3) there is insufficient evidence to support his conviction for assault because the State's theory was that Carr assaulted the police officer by drawing and firing a gun, which the jury implicitly rejected when it acquitted Carr of attempted murder, assault on a peace officer while using or displaying a dangerous weapon, and interference with official acts while using or displaying a dangerous weapon; (4) there is insufficient evidence to support his conviction for first-degree robbery; (5) the district court abused its discretion in denying his motion for new trial on the assault and first-degree-robbery

---

[1] Carr applied for discretionary review, asking for review of the sufficiency of the evidence on his assault conviction—a simple misdemeanor—claiming that otherwise Carr would not be afforded substantial justice. *See* Iowa R. App. P. 6.106(2). Our supreme court granted Carr's application before transferring the case to us.

convictions; and (6) even if there is sufficient evidence to support both the assault and the first-degree robbery convictions, the two should have merged.

**I. Background Facts and Proceedings.**

On May 2, 2020, just before 8:00 a.m., Carr and a female friend walked into a Council Bluffs convenience store.[2] Carr picked up a gas can before one of the workers, Dakota, heard Carr and the woman discussing how they forgot to bring money. Then Carr put the gas can under his shirt and exited the store without paying; his friend followed a few seconds later. After double checking that Carr had not paid, Dakota took a few steps outside and asked Carr to come back and return the gas can. Carr walked toward him; Dakota believed Carr was intending to hand the gas can over.

As Carr exited the store, Officer Michael Roberts pulled up, intending to get a cup of coffee. Officer Roberts walked up to Dakota and Carr and immediately asked if the gas can was paid for; Dakota told him it was not. Carr continued to hold the gas can in his right hand and had his left hand in a pocket. According to Officer Roberts, he told Carr to remove his hand from his pocket so they could talk; Carr reponded, "I got this, it's all good" and started pacing slightly. Officer Roberts again ordered him to remove his hand from his pocket and, when Carr did not comply, moved to handcuff Carr. Officer Roberts testified he grabbed the hand holding the gas can while he reached for his handcuffs; Carr "made a stutter step," and Officer Roberts shoved him. "[I]mmediately after that shove, [Officer Roberts]

---

[2] The convenience store had cameras recording from several angles both inside and outside of the store. A number of videos of the time period at issue were entered into evidence at trial.

heard a pop. And then [Carr] hit[] a stand of windshield wiper fluid, and [Officer Roberts saw] out of the corner of [his] eye something flying." It was a gun. Carr got up and, believing Carr was running toward the gun, Officer Roberts shoved Carr a second time. According to Officer Roberts, he "kind of push[ed] him forward, closer to the gun. And [Carr got] up quick again. And he[ was] within a few feet, and he start[ed] leaning over for the gun, and [Officer Roberts drew] his service weapon and fire[d] two rounds at him." One of the bullets hit Carr and lodged in his buttock.

Once backup arrived, Carr was taken into custody. He was taken to the hospital, and the clothing he was wearing—including boxers, athletic shorts, and jeans—was retained as evidence. The gun Officer Roberts saw "flying" remained on the ground where it fell until it was also recovered.

Carr was charged with attempted murder of a peace officer (count I), robbery in the first degree (count II), assault on a peace officer while using or displaying a dangerous weapon (count III), interference with official acts while using or displaying a dangerous weapon (count IV), and felon in possession of a firearm (count V). He pled not guilty and proceeded to a jury trial.

At trial, the prosecutor elicited testimony from Dakota that after Officer Roberts first told Carr to put his hands up, Carr "flashed something or his waistband or something." Dakota testified, "Officer Roberts was yelling, 'Freeze, stop,' and I heard disfire [sic]. I don't know whose gun went off first. Next thing you know, Officer Roberts is grabbing his gun." During his testimony, Officer Roberts admitted he "never saw the pistol on" Carr. But he testified that later, when Carr was being taken into custody, he asked Carr about the gun and Carr's response

was, "I need to protect myself."  Officer Roberts took this to mean Carr admitted the gun was his.

One of the crime scene investigators from the Council Bluffs Police Department testified at trial.  She testified they recovered only two bullet casings from the scene—both fired from Officer Roberts's gun.  A third casing was found still in the chamber of the gun that was recovered.  The only recovered bullet was the one lodged in Carr's body.  The investigator also observed "a defect, a hole, in the wall that may have been caused by a fired bullet in the side of the building."  It was never confirmed to be a bullet hole—no bullet was recovered and no reconstructions of the scene was completed.  And the investigator could not say whether the cartridges Officer Robert had in his gun—9 mm—or the cartridges in the recovered gun—.380 ACP—may have caused it.  The investigator also testified about the clothing taken from Carr at the hospital; the front pockets of his jeans did not have any defects—no holes from a bullet or otherwise.  The athletic shorts he was wearing under the jeans had a defect in one of the pockets; the investigator could not testify about what caused it.  She testified she used an infrared camera to look for gunshot residue inside the pockets of the athletic shorts and did not observe any.  When asked by defense counsel, the investigator agreed her report did not list the pockets as being tested but testified she remembered completing the testing.

Carr rested without presenting a defense.

The jury acquitted Carr of attempted murder of a peace officer.  It found him guilty of lesser-included charges on both count III and IV—assault as part of assault on a peace officer while using or displaying a dangerous weapon and

interference with official acts as a lesser included of interference with official acts while using or displaying a dangerous weapon. The jury also convicted Carr of first-degree robbery and felon in possession of a firearm.

Carr filed what he called a combined motion in arrest of judgment and for new trial. In the motion, Carr considered the elements of the various charged crimes and, based on the jury's overall verdict, argued it found he "possessed a firearm but did not display or use that firearm." He claimed there was insufficient evidence to support his conviction for first-degree robbery and assault and argued arrest of judgment was the proper remedy. Carr moved for new trial based on an improper statement made by the prosecutor and an alleged issue involving whether his jury pool was comprised of a fair cross section of the community.

The court took up the motions before sentencing Carr. After some discussion about case law and Carr's motion, the court stated it would "consider [Carr's claims of insufficient evidence] as a motion for new trial" and "weigh the evidence in total, consider the credibility of each witness" and determine if "there's a miscarriage of justice." After arguments from Carr and the State, the court broadly denied Carr's motion.

Carr was sentenced to twenty-five years in prison for first-degree robbery with a 70% mandatory minimum and five years for being a felon in possession of a firearm, he was ordered to serve those two sentences concurrently. The court also sentenced Carr to thirty days for assault and interference with official acts, with those two sentences served concurrently.

Carr appeals.

**II. Discussion.**

**A. Jury Instructions.**

**1. Implicit Bias.**

Carr is African American; he asked the district court to give the jury the instruction on implicit bias that was proposed by the "Achieving an Impartial Jury" Project (AIJ Project), which states:

> Our system of justice depends on judges like me and jurors like you being able and willing to make careful and fair decisions. Scientists studying the way our brains work have shown that, for all of us, our first responses are often like reflexes. Just like our knee reflexes, our mental responses are quick and automatic. Even though these quick responses may not be what we consciously think, they could influence how we judge people or even how we remember or evaluate the evidence.
>
> Scientists have taught us some ways to be more careful in our thinking that I ask you to use as you consider the evidence in this case:
>
> Take the time you need to test what might be reflexive unconscious responses and to reflect carefully and consciously about the evidence.
>
> • Focus on individual facts, don't jump to conclusions that may have been influenced by unintended stereotypes or associations.
>
> • Try taking another perspective. Ask yourself if your opinion of the parties or witnesses or of the case would be different if the people participating looked different or if they belonged to a different group.
>
> • You must each reach your own conclusions about this case individually, but you should do so only after listening to and considering the opinions of the other jurors, who may have different backgrounds and perspectives from yours.
>
> Working together will help achieve a fair result.

AIJ Project, *Toolbox*, Am. Bar Ass'n 17–20 (footnotes omitted), https://www.americanbar.org/content/dam/aba/publications/criminaljustice/voirdire_toolchest.pdf (last visited Oct. 12, 2022); *see also State v. Williams*, 929 N.W.2d 621, 632–33 (Iowa 2019).

The prosecutor resisted, arguing the court "should stick with the model. That's what happened in [*Williams*]. The [s]upreme [c]ourt certainly did not disapprove of the proposed instruction, but they specifically approved of the model. I'm not a fan of messing around with models too much, so our position would be we should give the model." The court denied Carr's request, stating the instruction from *State v. Lilly*, 930 N.W.2d 293, 297 (Iowa 2019) plus model instruction 100.8 "covers everything, has been used and has been approved, obviously, and with those two together I think covers everything that would need to be covered." The court ultimately instructed the jury as follows:

> You must determine Jimmy Carr's guilt or innocence from the evidence, and the law in these instructions. You must consider all of the instructions together. No one instruction includes all the applicable law. My duty is to tell you what the law is. Your duty is to accept and apply this law and to decide all fact questions.
> As you consider the evidence, do not be influenced by any personal sympathy, bias, prejudices or emotions. It is common to have hidden or implicit thoughts that help us form our opinions. You are making very important decisions in this case. You must evaluate the evidence carefully. You must avoid decisions based on things such as generalizations, gut feelings, prejudices, fears, sympathies, stereotypes, or inward or outward biases. The law demands that you return a just verdict, based solely on the evidence, your reason and common sense, and these instructions. As jurors, your sole duty is to find the truth and do justice.

*See generally* Iowa State Bar Ass'n, Iowa Crim. Jury Instruction 100.8. The court also instructed the jury:

> Reach your verdict without discrimination. In reaching your verdict, you must not consider Jimmy Carr's race, color, religious beliefs, national origin or sex. You are not to return a verdict for or against Jimmy Carr unless you would return the same verdict without regard to his race, color, religious beliefs, national origin or sex.

*See Lilly*, 930 N.W.2d at 297. Carr maintains the district court erred in refusing to give the specific implicit-bias instruction that he requested.

"Iowa law permits—but does not require—cautionary instructions that mitigate the danger of unfair prejudice." *State v. Plain*, 898 N.W.2d 801, 816 (Iowa 2017). "We review the issuance or denial of a requested cautionary instruction for abuse of discretion and only reverse if the district court's decision rested on grounds or reasoning that were clearly untenable or clearly unreasonable." *Id.* An erroneous application of law, such as the wrong belief the court is without the authority to give an instruction, constitutes an abuse of discretion. *See id.* at 816–17 (finding the refusal to give an instruction because of an erroneous belief the court lacked the authority to give the instruction was an error of law, which constituted an abuse of discretion). Even when the court abuses its discretion in refusing a requested jury instruction, we only reverse if the refusal "results in prejudice to the complaining party." *Id.* at 817 (citation omitted).

Carr suggests the district court refused to give the requested instruction because it differs from Iowa's model jury instruction on implicit bias and has not yet been explicitly endorsed by the Iowa Supreme Court[3]; he maintains this basis for refusal is an erroneous application of the law. But unlike in *Plain*, the district court here did not wrongly believe it lacked authority to give Carr's requested instruction. *See id.* And there is a distinction between refusing to give a jury instruction because of a failure to recognize (and therefore, exercise) the court's discretion to do so and recognizing the court may give a requested instruction but deciding to give different, already-approved instruction. *See Williams*, 929 N.W.2d at 633 (finding no abuse of discretion when district court used model instruction

---

[3] Carr recognizes it was the prosecutor who made this argument and the district court did not specifically adopt it when rejecting Carr's requested instruction.

100.8 instead of the AIJ Project instruction the defendant requested because "the district court did not conclude it lacked authority to give an implicit-bias instruction. Rather, it found that [model instruction 100.8] adequately addressed the concern").

The district court did not abuse its discretion in choosing to give implicit-bias instructions other than the one requested by Carr. That said, nothing we have seen in the decisions of our supreme court and nothing we have said here is meant to suggest courts should not give the AIJ Project instruction when asked. *Cf. Williams*, 929 N.W.2d at 633 (pointing out that just because the model instruction was appropriately given "does not mean, of course, that it would have been an abuse of discretion to use [the AIJ Project] instruction").

**2. Participating in a Public Offense.**

Carr objected to the court giving the jury instruction 16, participating in a public offense, which states: "A person participates in a crime beginning with the first act done toward the commission of the crime and ending when a person has been arrested or has escaped from pursuers. A person participates in a crime regardless if he is successful in committing it." Iowa State Bar Ass'n, Iowa Crim. Jury Instruction 200.6. He argued:

> I don't believe that the ongoing nature of the acts that is described in [i]nstruction 16 is appropriate for this case. I would give the Court an example of where when a person, beginning with a first act done towards the commission of a crime and ending when a person has been arrested or has escaped from pursuers.
> If you were to think of regular thefts, which is the intent to permanently deprive someone of property, if I were to take property from [the prosecutor], walk out and intend to permanently deprive him of that property, walk out of the courtroom and decide two minutes later that I actually did not want to deprive him of that property and I came back and returned it to [him], I have not been arrested and I have not escaped. Therefore, I believe that this jury instruction is not appropriate for this case.

The prosecutor responded that the instruction was "an accurate statement of the law and it ought to stay in the package." The district court agreed it was an accurate statement of law and overruled Carr's objection.

During the State's rebuttal closing argument, the State referenced instruction 16 when discussing the State's theory of why Carr was guilty of robbery in the first degree, stating:

> Under the theory that once you walk out the door the theft is complete, there would never be a robbery, it'd just be a whole different deal. It's like, oh, I got out, once I get out the door, olly olly oxen free, no robbery for me. You know, I can beat the crap out of somebody, you know, assault 'em, or I can point a gun at 'em, it's a whole different deal, but it's not a robbery, right? That's not the way it works. If you're using the assault to get away from the scene. And he's not even off the property yet. If you're using the assault to get away from the scene and assist you, that's part of the escape.
> And you have another instruction, I feel like it's [instruction]16 . . . . But it says a person commits a crime with the first act toward committing it and it's not complete till they're arrested or they escape from pursuers. So the whole the theft, hasn't got away with it, he got out the door and a fairly vigilant clerk spots him, heads down, says, hey, get back here. That doesn't make him not guilty that he goes, "Oops, you caught me." That just means that, you know, he's trying to figure out, well, what's the best thing to do.

The jury found Carr guilty of first-degree robbery.

On appeal, Carr claims that the instruction was a misstatement of law because the instruction wrongly "indicates that only two circumstances could end Carr's participation in theft: arrest or escape." But, according to Carr, "section 702.13[4] contemplates that a person could be participating in a public offense

---

[4] Iowa Code section 702.13 states:
> A person is "participating in a public offense," *during part* or the entire period commencing with the first act done directly toward the commission of the offense and for the purpose of committing that offense, and terminating when the person has been arrested or has

during *part* of the period commencing with the first act toward commission of the offense and ending with either arrest or escape, but not necessarily continuously participating in the offense until one of those events occurs."[5]

The State responds that Carr's complaint about instruction 16 is based on a misunderstanding because the "participating in a public offense" instruction does not apply to robbery in the first degree. We agree with the State. As charged here, robbery does not require "participation in a public offense"—which is a term of art.[6] Instead, the operative questions are whether Carr had a specific intent to commit theft and whether, "to assist or further the commission of the intended theft or the person's escape from the scene thereof with or without the stolen property," he

---

withdrawn from the scene of the intended crime and has eluded pursuers, if any there be. A person is "participating in a public offense" during this period whether the person is successful or unsuccessful in committing the offense.
(Emphasis added.)

[5] This is not the same objection Carr made at trial; Carr did not ask the district court to add words so the instruction mirrored section 702.13. *See Grefe & Sidney v. Watters*, 525 N.W.2d 821, 824 (Iowa 1994) ("Objections to the court's instructions must specify the subject of the objection and the grounds of the objection. Further, the objection must be sufficiently specific to alert the trial court to the basis of the complaint so that if error does exist the court may correct it before placing the case in the hands of the jury." (citing now Iowa R. Civ. P. 1.924)); *see also State v. Maghee*, 573 N.W.2d 1, 8 (Iowa 1997) ("Rules relating to civil jury instructions apply to criminal trials.").

[6] *Cf. State v. Liggins*, 557 N.W.2d 263, 267 (Iowa 1996) (finding no error when court gave instruction on participating in public offense for felony-murder charge because "[a] conviction for first-degree murder premised on felony murder requires a finding that a defendant was 'participating' in a forcible felony. Therefore, it is important to define 'participation'"); *see also* Iowa Code §§ 321.279(3)(a) (providing a person commits a class "D" felony if they attempt to elude a peace officer while exceeding the speed limit by at least twenty-five miles per hour and "[t]he driver is *participating in a public offense*, as defined in section 702.13"), 703.2 (defining joint criminal conduct as "[w]hen two or more persons, acting in concert, knowingly *participate in a public offense*, [and] each is responsible for the acts of the other done in furtherance of the commission of the offense or escape therefrom . . . ." (emphasis added)).

committed an assaultive or threatening act.[7]  *See* Iowa Code § 711.1.  The State did not have to prove whether Carr was still in the process of committing a theft at the time of any alleged assaultive or threatening action; the State had to prove Carr "committed as assault on" Officer Roberts or "purposely put [him] in fear of immediate serious injury" in order to carry out a theft or assist Carr in escaping from the scene.

The State argues this should end our analysis—Carr's claim instruction 16 incorrectly defines the period for first-degree robbery misses the mark because the complained-of instruction doesn't apply to first-degree robbery.  But to what charged crime or crimes does instruction 16 apply?  Carr objected to the instruction being given, arguing "the ongoing nature of the acts that is described in [i]nstruction 16 is [not] appropriate for this case."  The State resisted, broadly asserting the instruction was an "accurate statement of the law," and the court gave the instruction over Carr's objection.  Nothing in the jury instructions themselves tie instruction 16 to any of the crimes; no marshalling instruction incorporates or

---

[7] This is similar to the instruction the jury was given for first-degree robbery, which neither the State nor Carr contested.  Instruction 21 states:
> [T]he State must prove all of the following elements of robbery in the first degree:
>     1. On or about the 2nd day of May, 2020, Jimmy Carr had the specific intent to commit a theft.
>     2. To carry out his intention or to assist him in escaping from the scene, with or without the stolen property, Jimmy Carr:
>         a. Committed an assault on Michael Roberts, or
>         b. Purposely put Michael Roberts in fear of immediate serious injury.
>     3. Jimmy Carr:
>         a. Purposely inflicted or attempted to inflict a serious injury on Michael Roberts, or
>         b. Was armed with a dangerous weapon.

references instruction 16. The only indication of how to use the "participating in a public offense" instruction came from the prosecutor during the State's rebuttal closing argument, when he urged the jury to use the instruction when considering the first-degree-robbery charge. It would be unfair to allow the State to argue for the inclusion of the jury instruction to the district court, rely on the instruction in its closing argument to the jury about why it should convict Carr of robbery, and then—after the jury has done so—take the position on appeal that the instruction is unrelated to the crime so there is no need for our review. *Cf. State v. Duncan*, 710 N.W.2d 34, 43 (Iowa 2006) ("A party who has, with knowledge of the facts, assumed a particular position in judicial proceedings is estopped to assume a position inconsistent therewith to the prejudice of the adverse party." (citation omitted)); *Wilson v. Liberty Mut. Grp.*, 666 N.W.2d 163, 166 (Iowa 2003) (describing judicial estoppel as "a 'common sense' rule, designed to protect the integrity of the judicial process by preventing deliberately inconsistent—and potentially misleading—assertions from being successfully urged in succeeding tribunals").

The district court erred in giving instruction 16. *See Liggins*, 557 N.W.2d at 267 ("We review jury instructions to decide if they are correct statements of the law and are supported by substantial evidence."). But "[e]rror in a particular instruction does not require reversal unless the error was prejudicial to the complaining party." *State v. Hanes*, 790 N.W.2d 545, 548 (Iowa 2010). "When a court erroneously gives . . . a jury instruction, 'we presume prejudice and reverse unless the record affirmatively establishes there was no prejudice.'" *State v. Mathis*, 971 N.W.2d 514, 520 (Iowa 2022) (citation omitted). "When the error is not of constitutional

magnitude, the test of prejudice is whether it sufficiently appears that the rights of the complaining party have been injuriously affected or that the party has suffered a miscarriage of justice." *Id.* And "[o]ur analysis of prejudice is . . . influenced by an evaluation of whether a jury instruction could reasonably have misled or misdirected the jury." *Hanes*, 790 N.W.2d at 551.

We cannot find Carr was prejudiced by the inclusion of instruction 16. Carr's theory—raised at trial and again in his appeal brief—is that because he wanted to return the stolen gas can and was in the process of doing so when Officer Roberts engaged with him, any attempted theft was complete and any assaultive or threatening behavior that came after cannot be part of a robbery. He maintains it was the improper wording of instruction 16 that stopped him from succeeding on this theory. But the district court should not have given the instruction Carr now wants to apply to first-degree robbery.[8] And even if the jury applied instruction 16 as written to the robbery charge, the instruction did not expand the period for which the jury was to consider Carr's actions to determine if he committed a robbery. The jury was properly instructed that it was allowed to consider the time "after" an intended theft when determining if Carr committed a robbery:

> [T]he Iowa Legislature has proscribed conduct which would not have constituted robbery at common law. Without question [section 711.1] expands the time span in which the required assault or threat of physical violence can occur. Explicitly included within this statutory definition of robbery is an assault committed after a theft has been completed but which furthered the offender's escape.

*State v. Jordan*, 409 N.W.2d 184, 186 (Iowa 1987) (internal citation omitted).

---

[8] As we already stated, as a matter of law, participating in a public offense does not apply to this crime. And Carr did not request the addition of "part of" to instruction 16 when he raised his objection to the district court.

Because this record affirmatively establishes Carr was not prejudiced by the improper instruction, we will not reverse his conviction for first-degree robbery.

**B. Sufficiency of the Evidence.**

Carr challenges the sufficiency of the evidence supporting his convictions for assault and first-degree robbery. Based on a recent change in case law, there is no error-preservation requirement to challenge sufficiency of the evidence on appeal. *See State v. Crawford*, 972 N.W.2d 189, 202 (Iowa 2022). We review for correction of errors at law. *Id.* "In conducting that review, we are highly deferential to the jury's verdict." *Id.* "In determining whether the jury's verdict is supported by substantial evidence, we view the evidence in the light most favorable to the State, including all 'legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence.'" *Id.* (citation omitted).

**1. Assault.**

For the jury to properly convict Carr of assault, the State had the burden to prove:

> 1. On or about the 2nd day of May, 2020, Jimmy Carr did an act which was intended to cause pain or injury or result in physical contact which was insulting or offensive or placed Michael Roberts in fear of an immediate physical contact which would have been painful, injurious, insulting or offensive to Michael Roberts.
> 2. Jimmy Carr had the apparent ability to do the act.

Assault is a specific-intent crime. *See, e.g.*, *State v. Fountain*, 786 N.W.2d 260, 265 (Iowa 2010). It requires not only that Carr intended to cause pain or injury or result in physical contact which was insulting or offensive or placed Officer Roberts in fear of an immediate physical contact which would have been painful, injurious,

insulting or offensive to Michael Roberts, but also an overt act by Carr. *See State v. Heard*, 636 N.W.2d 227, 230–32 (Iowa 2001).

Carr argues there is insufficient evidence in the record to establish he took any action with the intent to cause pain or injury to Officer Roberts or to place Officer Roberts in fear of an immediate physical contact that would have been painful or injurious. Carr claims the jury's acquittal of him of the charges that involved using or displaying a dangerous weapon shows the jury found he never used or displayed the recovered gun.

First, the jury was asked to and returned only a general verdict—the jury made no specific findings of fact that we can now rely on. *See Clinton Physical Therapy Servs. P.C. v. John Deere Health Care, Inc.*, 714 N.W.2d 603, 610 (Iowa 2006) (comparing general verdicts, "in which the jury only makes a finding in favor of one party over the other party, "with special verdicts and general verdicts supplemented with written interrogatories). And second, even if the jury concluded that Carr never displayed or intentionally discharged the gun, it still could have found that Carr went for a gun on his person rather than removing his hand from his pocket—as Officer Roberts ordered. Carr's action of rooting around in his pocket attempting to free the gun to pull it on Officer Roberts—whether he was successful in his goal or not—was an act done with the intention to put Officer Roberts in fear of immediate physical contact (a gunshot) that would have been painful or injurious.

When arguing Carr's post-trial motions to the district court, Carr's attorney claimed this could not be the facts the jury found because that would constitute "using" the dangerous weapon. But the jury was never instructed on what it meant

to "use" the weapon. A common definition of "use" is "to put into action or service." *Use*, Merriam Webster, https://www.merriam-webster.com/dictionary/use (last visited Nov. 9, 2022); *see also State v. Gonzalez*, 718 N.W.2d 304, 308 (Iowa 2006) ("We may consult a dictionary in order to determine the ordinary meanings of words used by the legislature."). That Carr was unable to retrieve the gun from his pocket and point it at Officer Roberts could be understood to show he did not actually "use" (or display)[9] the gun. But failing to pull the gun on Officer Roberts does not change the fact Carr made an overt action and the intended result of that action was to place Officer Roberts in fear of immediate physical contact that was painful or injurious.

Substantial evidence supports Carr's conviction for assault.

**2. First-Degree Robbery.**

Next, building off his sufficiency-of-the-evidence argument on his assault conviction, Carr argues there is not substantial evidence he committed first-degree robbery. For the jury to properly convict Carr of robbery in the first degree, the State had to prove:

> 1. On or about the 2nd day of May, 2020, Jimmy Carr had the specific intent to commit a theft.
> 2. To carry out his intention or to assist him in escaping from the scene, with or without the stolen property, Jimmy Carr:
>   a. Committed an assault on Michael Roberts, or
>   b. Purposely put Michael Roberts in fear of immediate serious injury.
> 3. Jimmy Carr:

---

[9] *See State v. Hall*, No. 15-1467, 2016 WL 4543891, at *2 (Iowa Ct. App. Aug. 31, 2016) (noting there was no definition of "display" within the statute on interference of official acts or in case law; using the common definition of the word to determine the defendant displayed an open pocket knife because he "exhibited the knife to the sight of" the officer).

a. Purposely inflicted or attempted to inflict a serious injury on Michael Roberts, or

b. Was armed with a dangerous weapon.

Carr challenges the second element, claiming he neither committed an assault nor purposely put Officer Roberts in fear of immediate serious injury. As we have already concluded there is substantial evidence to support the jury's determination Carr assaulted Officer Roberts, we do not consider this further.

**C. Motion for New Trial.**

Carr argues the district court was wrong to deny his motion for new trial; he claims the weight of the credible evidence is contrary to the jury's finding of guilt for assault and first-degree robbery. "We review a trial court's ruling on a motion for new trial for an abuse of discretion." *State v. Shanahan*, 712 N.W.2d 121, 135 (Iowa 2006). "Except in the extraordinary case where the evidence preponderates heavily against the verdict, trial courts should not lessen the jury's role as the primary trier of facts and invoke their power to grant a new trial." *Id.*

The State contests error preservation because Carr argued for a different, incorrect standard to the district court. But because Carr brought the motion for new trial and ultimately got the ruling he now contests, we conclude error was preserved. *See Crawford*, 972 N.W.2d at 198 ("When we speak of error preservation, all we mean is that a party has an obligation to raise an issue in the district court and obtain a decision on the issue so that an appellate court can review the merits of the decision actually rendered."); *Segura v. State*, 889 N.W.2d 215, 219 (Iowa 2017) ("[E]rror preservation does not turn on 'hypertechnical' challenges.").

The main point of contention at trial was whether Carr drew a gun and purposely fired at Officer Roberts. The jury seemingly concluded he did not—acquitting Carr of attempted murder of a peace officer, assault on a peace officer while using or displaying a dangerous weapon, and interference with official acts while using or displaying a dangerous weapon.[10] In an argument mirroring his claims of insufficient evidence, Carr argues the weight of the evidence does not support a finding Carr used and shot the gun at Officer Roberts. Without enough evidence he used or shot the gun, Carr claims the weight of the evidence does not support a determination he assaulted Officer Roberts or committed first-degree robbery. But, as we stated in the section on sufficiency of the evidence, the State did not need to prove Carr used or intentionally shot the gun for the jury to conclude Carr assaulted Officer Roberts. The weight of the credible evidence supported a finding Carr refused to remove his hand from his pocket when ordered and then rooted around in his pocket, attempting to pull a gun free.[11] This overt act, combined with the intention to place Officer Roberts in fear of immediate physical contact that would have been painful or injurious, constitutes assault. Accordingly, the district court did not abuse its discretion in denying Carr's motion for new trial.

---

[10] These rejected charges share similar elements. The attempted-murder charge required the jury to find Carr "specifically intended to cause the death of" Officer Roberts; assault on a peace officer while using or displaying a dangerous weapon required a finding Carr "intentionally pointed a firearm toward [Officer] Roberts or displayed a dangerous weapon toward [Officer Roberts] in a threatening way"; and interference with official acts while using or displaying a dangerous weapon required that Carr "displayed or used a dangerous weapon."

[11] "'When making a ruling on a motion for new trial, the trial court should state the reasons for its ruling.' When the trial court has failed to do so, we may review the record to determine if there is a proper basis for the trial court's ruling." *State v. Moore*, No. 16-1616, 2017 WL 4317298, at *3 (Iowa Ct. App. Sept. 27, 2017) (quoting *State v. Maxwell*, 743 N.W.2d 185, 192 (Iowa 2008)).

**D. Illegal Sentence: Merger.**

Carr challenges the legality of his sentences. *See State v. Negrete-Ramirez*, No. 07-1059, 2008 WL 4531532, at *1 (Iowa Ct. App. Oct. 1, 2008) ("Merger implicates the legality of the sentence. An illegal sentence can be challenged at any time, and we can address the issue even if it was not expressly addressed below." (internal citations omitted)). He argues that, at most, there was substantial evidence to establish he committed one assault. Because assault is a lesser-included offense of robbery as charged here, "[i]f the robbery and assault charges were predicated on a single assault, the two crimes should merge." *State v. Nyomah*, No. 17-1435, 2018 WL 3471605, at *1 (Iowa Ct. App. July 18, 2018). But, if Carr committed multiple assaults, then merger is not required. *See State v. Clay*, No. 14-0864, 2015 WL 4935606, at *6 (Iowa Ct. App. Aug. 19, 2015) ("Merger is not required when each charged offense may be proven by a different criminal act." (citing *State v. McKettrick*, 480 N.W.2d 52, 56 n.2 (Iowa 1992) (noting merger would not preclude "a conviction of both assault with intent to commit serious injury and assault causing bodily injury" when the State proves that "a series of assaults occurred"))).

The State disputes there is only substantial evidence of one assault. But it concedes that if we find only one assault was committed, then merger is the appropriate remedy. Because we conclude there is substantial evidence of only one assault, we agree with Carr that his conviction for assault should merge with his conviction for first-degree robbery, we vacate his assault conviction and remand for dismissal of that count. *Cf. Negrete-Ramirez*, 2008 WL 4531532, at *2.

**III. Conclusion.**

The district court did not abuse its discretion in declining to give the specific explicit-bias instruction Carr requested. It was an error to give the instruction on participating in a public offense, but Carr was not prejudiced by the error. Substantial evidence supports Carr's convictions for assault and first-degree robbery. But, because assault is a lesser-included of the robbery charge and there is not substantial evidence of multiple assaults, Carr's assault conviction should merge with the robbery conviction. We vacate the assault conviction and remand for dismissal of that count. Finally, the district court did not abuse its discretion in denying Carr's motion for new trial.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**